Argued April 6, affirmed May 24, 1972

STARKWEATHER, *Respondent, v.* SHAFFER,
*Appellant.*

497 P2d 358

*Gene L. Brown,* Grants Pass, argued the cause and filed the briefs for appellant.

*Donald F. Myrick,* Grants Pass, argued the cause for respondent. On the brief were Donald H. Coulter and Myrick, Coulter, Seagraves & Nealy, Grants Pass.

HOWELL, J.

This is an action for damages against the defendant, a realtor in Josephine county. Judgment was entered on a verdict for plaintiff for $5,000 general damages and $5,000 punitive damages, and defendant appeals.

The defendant presents 18 assignments of error, many of which are repetitious. Included in the assignments of error are contentions that the trial court erred in refusing to grant defendant's motions for a judgment of involuntary nonsuit and a directed verdict.

Viewed in the light most favorable to plaintiff, the evidence discloses the following.

In 1968 plaintiff was the owner of approximately 12 acres of rural residential property in Josephine county. He was recently divorced and had custody of his small son. Plaintiff had been seriously ill and was not employed at the time. He decided to sell his property, and in February, 1968, plaintiff contacted a saleswoman representing defendant. She prepared an agreement wherein the defendant listed the property for sale for $15,000. The representative neglected to have plaintiff sign the listing agreement, but apparently this did not concern her because she testified that she "figured we had a listing even though it really

was just information when it is not signed by the man who called up." Some advertising was done and the property shown about three times.[①] Plaintiff became concerned about the lack of interest in his place and called defendant Shaffer, who came out to plaintiff's home. After looking over the property, defendant told plaintiff that "he couldn't move it for the fifteen" and inquired whether plaintiff would reduce the price. Plaintiff mentioned $12,500, but defendant said that "he had other properties that were as good or better that he couldn't move for ten, so he said maybe seven or eight, something like this would move it faster."

Later, on May 17, 1968, defendant prepared, and plaintiff signed, a document labeled "Earnest Money Receipt" wherein plaintiff agreed to sell the property for $8,000. The document stated the following:

> "This offer is subject to buyer's inspection and acceptance. * * * Thereby grant Shaffer Rlty. 10 days time from date to get buyer's acceptance."

The agreement was signed by plaintiff on the line for the seller's signature, but the purchaser's signature line was left blank. The agreement obligated plaintiff to pay defendant a commission of $480.

Three days later defendant called plaintiff and told him "he thought he had a buyer." When plaintiff arrived at defendant's office, defendant told him he was the buyer. The plaintiff testified the defendant also told him that he had to sell his property because he had signed the earnest money receipt. The defendant then prepared, and plaintiff signed, another

---

[①] The following ad appeared in the Grants Pass paper on April 9, 1968:

"12 ACRES—3 bedroom furnished home (needs little work). Land is wooded and meadows. Good well. Pond. Great place for large family. $15,000. Terms."

earnest money receipt whereby plaintiff sold the property to defendant for $7,520, which sum represented the original price of $8,000 as stated in the first earnest money receipt, less a commission of $480.

The defendant spent $1,277 cleaning the property and painting the buildings. He also ran advertisements in the local newspaper offering the property for sale in two separate parcels—one of four acres[2] and the buildings for $13,500, and the other parcel of eight acres for $6,400. Both properties were sold at these prices by the end of August, 1968.

In his complaint, plaintiff alleged that a fiduciary relationship existed between plaintiff and defendant; that defendant breached his duty to plaintiff in various particulars, including misrepresenting to plaintiff that the property could not be sold for $15,000 and that its value was only $8,000; and that defendant misrepresented to plaintiff that he, the defendant, was acting for a third party purchaser and induced plaintiff to execute the earnest money receipt to sell the property for $8,000.

---

[2] The advertisement for the four-acre parcel stated as follows:

"T'AINT REAL FANCY

"But look what $13,500 buys—Good older (large) farm home with four (4) acres fine land. The home has been recently redecorated and painted inside and out. There are 3 or 4 bdrms. Large living room with full dining area. Big farm style kitchen with service porch. Large workshop, carport and woodshed. Livestock shelter and poultry house. Spring fed pond with year round water. Magnificent place to raise your children. Keep ponies, calves, sheep, chickens, etc. School bus at front gate. Also thrown in free of charge is some furniture which includes good heating stove; washer and dryer, dining room table and chairs; several dressers; davenport; farm and garden tractor. This charming big family farm home is located about 12 miles from town on paved road. More land available if needed. Owner will carry the paper with moderate down payment from responsible party."

The complaint also contained a second cause of action which consisted only of a demand for punitive damages. No demurrer was filed to the complaint.

At the trial the defendant moved for a nonsuit and directed verdict on the grounds of a failure of proof. The defendant treated the first cause of action as being one for fraud and deceit. The exact basis for both motions is difficult to determine. The defendant stated in his argument that the proof failed to show a value of the property in excess of $8,000; failed to show that defendant misrepresented that he was acting for a third party purchaser; and that no fiduciary relationship existed between plaintiff and defendant prior to May 17, 1968, when plaintiff signed the earnest money receipt. In regard to the latter, the defendant argues that the relationship of principal and agent is required under ORS 41.580 to be in writing subscribed by the party to be charged.

The law is well established in this state, as elsewhere, that a real estate broker stands in a fiduciary relationship with his client and is bound to protect his client's interest. He must make a full and understandable explanation to the client before having him sign any contracts, particularly when the contracts are with the broker himself. *Prall v. Gooden et ux,* 226 Or 554, 561, 360 P2d 759 (1961). The relationship casts upon the broker the burden of showing that there was a full and complete disclosure and that the broker did not reap a secret profit. *Widing et al v. Jensen, Real Estate Com.,* 231 Or 541, 544, 373 P2d 661 (1962); *Parker v. Faust,* 222 Or 526, 353 P2d 550 (1960). Specifically, if the brokers know that "by subdividing the property, a greater price therefor could be obtained, and failed to advise plaintiff of that fact, they [are]

guilty of a breach of their duty as real estate brokers."
*Ridgeway v. McGuire,* 176 Or 428, 433, 158 P2d 893
(1945).

■ From the evidence mentioned the jury could
have concluded that the defendant knew that plaintiff
was anxious to sell because of his physical and domestic
situation, that the defendant did not expend his best
efforts to advertise and show plaintiff's property, and
that the defendant told plaintiff he was unable to sell
the property at plaintiff's price, all with the anticipa-
tion that he would be able to purchase plaintiff's prop-
erty and re-sell it, keeping the gain for himself. While
the property was not sold by the defendant for $19,900
until three months after he purchased it from plaintiff,
the jury could have inferred that defendant knew of
its actual value when he purchased it from plaintiff on
May 20, 1968.

There was ample evidence to support the allega-
tions of the complaint.

■ The defendant also argues in support of the
motion for nonsuit that plaintiff's allegations and proof
of defendant's failure to advise plaintiff of the best
method to sell the property and misrepresenting the
value as being less than $15,000 could not be supported
because no broker-client relationship existed between
plaintiff and defendant prior to May 17, 1968, when
the parties signed the earnest money receipt. In sup-
port of this argument, defendant states that ORS
41.580(7) requires an agreement employing a broker
to be in writing. Therefore, according to the defendant,
as there was no writing before May 17, 1968, there was
no fiduciary relationship between the parties between
the time plaintiff first contacted defendant's firm to
sell his property and May 17, 1968.

Based on this reasoning, the defendant apparently concludes that he owed no duty to plaintiff to make any disclosure regarding the value of the property or the best method of selling it.

We conclude that a fiduciary relationship did exist between plaintiff and defendant prior to plaintiff's execution of the earnest money receipt on May 17.

■ A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. *Patterson v. Getz*, 166 Or 245, 287, 111 P2d 842 (1941).

It is true that the statute ORS 41.580(7) requires an agreement authorizing or employing a broker to be in writing and subscribed by the party to be charged. However,

> "* * * [t]he purpose of the statute was not to relieve real estate agents from their obligations as agents, but to protect the public against frauds perpetrated by dishonest agents through falsely claiming oral contracts of agency when another agent effected a sale by which the landowner was subjected to claims for commission by two or more agents, and by falsely claiming agency and claiming a commission for procuring a purchaser when no bona fide purchaser was in fact procured." *Krzysko v. Gaudynski*, 207 Wis 608, 242 NW 186 at 189 (1932).

*Accord, Harris v. Dunn*, 55 NM 434, 234 P2d 821 (1951); *Mitchell v. Allison*, 51 NM 315, 183 P2d 847 (1947).

If, as the defendant contends, no fiduciary relationship existed prior to May 17, 1968, the agent could make whatever misrepresentations he desired, with-

hold any information he should disclose, and fail to advise his principal that he, the broker, was planning to purchase the property, as long as he did so before the listing agreement was signed. Under these circumstances the defendant would be able to use the statute to perpetrate a fraud.

■ The trial court properly denied defendant's motion for a nonsuit and directed verdict.[9]

■ The defendant also assigns as error the failure of the court to withdraw from the jury's consideration plaintiff's allegations that defendant knew the value of the property exceeded $8,000, that defendant represented he was acting for a third party purchaser, when in fact defendant did not have a third party purchaser but was acting for himself and failed to exercise reasonable efforts to sell plaintiff's property. There was ample evidence to support all these allegations, and the trial court properly refused defendant's motion to remove them from the jury's consideration.

---

[9] While not set forth as an assignment of error, the defendant states in his brief that the plaintiff's complaint fails to state a cause of action for fraud and deceit. No demurrer was filed and no challenge to the sufficiency of the complaint was made in the trial court. Assuming the question is properly before us, the law is well-settled that the complaint must be liberally construed in favor of plaintiff, particularly after a verdict for plaintiff. Western Feed Co. v. Heidloff, 230 Or 324, 370 P2d 612 (1962). The complaint is not a model of pleading. However, it alleges that plaintiff reposed trust and confidence in defendant to represent his interests in selling the property; that defendant made various misrepresentations including that the value of the property was only $8,000, when defendant knew its value far exceeded that amount; and that defendant purchased the property himself and sold it for $19,900. We believe that the pleading as a whole is sufficient. McGill v. Huling Buick Company, 260 Or 413, 487 P2d 656 (1971). Moreover, the defendant was not misled as he stated at the time of the trial that "the basis of the action is an action in fraud." Fraud may be predicated on a failure to make a full and fair disclosure of all material facts where the parties stand in a confidential or fiduciary relation to one another. Prosser, Torts 697, § 106 (4th ed 1971).

■ The defendant also assigns as error the failure of the trial court to withdraw punitive damages from the jury's consideration. Punitive damages are recoverable when "the violation of societal interests is sufficiently great and the conduct involved is of a kind that sanctions would tend to prevent." *McGill v. Huling Buick Company,* 260 Or 413, 487 P2d 656 (1971); *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306 (1967).

■ Considering all the facts previously related, and defendant's fiduciary relationship with plaintiff, the defendant's liability for punitive damages was properly submitted to the jury for its determination.

We have examined the other assignments of error and consider them without merit.

Affirmed.