KUBIK, *Respondent,*

*v.*

J & R FOODS OF OREGON, INC.,
*Appellant.*

(No. 76-2043, SC 25091)

577 P2d 518

Scott M. Galenbeck, of Lively & Wiswall, Springfield, argued the cause and filed briefs for the appellant.

Dwayne R. Murray, Bailey, Doblie and Brunn, Eugene, argued the cause for respondent. With him on the brief was Jerome F. Bischoff, Eugene.

Before Denecke, Chief Justice, Holman and Howell, Justices, and Gillette, Justice Pro Tempore.

GILLETTE, J., Pro Tempore.

**GILLETTE,** Justice Pro Tempore.

Plaintiff brought an action seeking to recover damages for lost profits as a result of defendant's alleged breach of contract.[1] After defendant's demurrer for failure to state a cause of action was overruled, defendant filed an answer, the case was tried and a jury returned a verdict for plaintiff in the amount of $4,185. Defendant appeals, assigning as error the overruling of its demurrer and the trial court's denial of defendant's motions for directed verdict and nonsuit. We affirm.

■ Because plaintiff prevailed at trial, we review the facts in the light most favorable to plaintiff, and where there are contradictions in the testimony, for purposes of this appeal we accept plaintiff's version of the facts. *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973).

Defendant corporation operates Mr. K's Restaurant in Eugene, Oregon. Jack Kuykendahl is president of defendant corporation and 25 percent owner of Mr. K's. Kuykendahl and his business partner, the manager of Mr. K's became interested in a barbecue sauce and sandwich which plaintiff had developed. They decided they would like to use the sandwich in their restaurant. On April 30, 1975, plaintiff was invited to Kuykendahl's office to discuss arrangements for sale of the sauce. A contract was signed. It provided:

> "Mr. Edwin Kubik and Mr. K's Restaurant chain enters into the following agreement, this 30th day of April, 1975.
>
> "Mr. K's Restaurant agrees to purchase from Mr. Ed Kubik a special premix sauce to be used in toasted buns for the sum of ten dollars and fifty cents ($10.50), per gallon, and furnish thirty-two (32) bun toasters with directions for cooking and mixing formula with ground chuck meat, to be furnished by Mr. Edwin Kubik.

---

[1]Plaintiff also sought punitive damages, but they were withdrawn from the jury's consideration by the trial judge.

"Mr. K's Restaurant has the exclusive right-use-and interest in this special sauce and Mr. Edwin Kubik agrees to sell this formula only to Mr. K's Restaurant for a period of ten (10) years.

"The price per gallon to be adjusted yearly as the price of food escalates or decreases.

"Mr. Edwin Kubik agrees to give Mr. K's Restaurant sole right and option to purchase the formula in the State of Oregon.

"Bun toasters may be purchased for $10 each by Mr. K's Restaurant."

The contract on its face was an exclusive dealings arrangement. Parol evidence was admitted at trial to explain and supplement its terms. Both parties understood that, for a 10-year period, plaintiff could sell the sauce only to defendant. It was plaintiff's expectation that Kuykendahl would promote and market the sandwich using plaintiff's sauce at Mr. K's Restaurant, which Kuykendahl verbally assured plaintiff he would do. Plaintiff further expected that Kuykendahl would attempt to market the sauce in two other fast-food restaurants in Portland in which Kuykendahl owned an interest. Kuykendahl admitted that they discussed that possibility.

Beginning in May, 1975, defendant purchased several gallons of plaintiff's sauce each month. By August, however, plaintiff became dissatisfied with defendant's efforts at promoting the sauce and sandwich, and was particularly concerned that nothing was being done to market the sauce in other outlets. Plaintiff contacted another restaurant that was interested in the sauce and then contacted Kuykendahl to see if defendant would object to plaintiff selling the sauce elsewhere. Defendant did object and reminded plaintiff that they had an exclusive dealings contract.

Plaintiff did not sell the sauce to the other restaurant and continued to deliver seven to nine gallons of sauce each month to defendant. In October, however, defendant did not place an order for the sauce and

informed plaintiff that the sauce had become too expensive to buy and that Mr. K's felt it could make its own sauce for less. After plaintiff's attorney contacted defendant, defendant placed orders for the sauce in November, December and January, but for much smaller amounts. Defendant placed its last order for sauce on January 12, 1976. In April, 1976, plaintiff brought this action.

The confusion in this case arises because plaintiff pleaded and attempted to prove both the breach of an "exclusive dealings" contract *and* the breach of a "requirements" contract. The controlling statute (and source of the confusion) is ORS 72.3060, which speaks to both exclusive dealings contracts and requirements contracts and provides:

> "(1) A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.
>
> "(2) A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale."

■■ Although lumped under one provision in the Uniform Commercial Code, exclusive dealings contracts differ from requirements contracts. The obligation of good faith which is to be read into both types of contracts is of a slightly different nature. Under subsection (1), a requirements contract contains an implied obligation to use good faith in determining requirements. Under subsection (2), an exclusive dealings contract contains an implied good faith obligation to use best efforts to supply or promote the product. *See* Legislative Counsel Committee, Oregon Uniform Commercial Code, Comments 1, 3 and 5, p 38 (1962).

[ 183 ]

■ This distinction is important here because of defendant's assertion that the contract was a requirements contract made unenforceable by the lack of a written quantity term as required by the Uniform Commercial Code's Statute of Frauds, ORS 72.2010(1).[2] We need not deal with this contention, however, because a review of the pleadings, the evidence and the jury instructions reveals that plaintiff obtained his judgment solely upon a breach of the *exclusive dealings* contract, and, as we construe the Code, no specific quantity term is required in order for such a contract to be valid and enforceable.[3]

Plaintiff did not himself observe the distinction in his pleadings or at trial. In paragraph II of his complaint, plaintiff alleged the existence of the written exclusive dealings contract set out above. In paragraph III of his complaint, however, plaintiff pleaded the existence of a *requirements* contract:

> "Defendant agreed to purchase the exclusive rights in a sufficient quantity to meet the requirements of the defendant for a 10-year period."

Plaintiff's single allegation of breach is found in paragraph V of his complaint:

> "Subsequent to January 12, 1976, defendant has refused and continues to refuse to use or purchase additional quantities of the plaintiff's 'special sauce.' "

Defendant's refusal to purchase additional quantities of sauce would constitute a breach of the alleged

---

[2]"ORS 72.2010(1) states:

"Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of good shown in such writing."

[3] *See Wilsonville Concrete Prod. v. Todd Bldg. Co.,* 281 Or 345, 574 P2d 1112 (1978).

requirements contract. Construing the complaint liberally,[4] paragraph V may also be read to claim that defendant is not exercising its best efforts to promote sale of the sauce—a breach of the exclusive dealings contract.

Both the pleadings and the proof thus presented a mixed bag: breach of an exclusive dealings contract and breach of a requirements contract. However, the case was submitted to the jury solely on the basis of an *exclusive dealings* contract. The trial judge instructed the jury:

> "* * * [I]t is your duty to decide whether the defendant used best efforts to promote and market the plaintiff's sauce. Although the agreement between the plaintiff and the defendant does not promise in so many words that defendant will use reasonable efforts to promote and market plaintiff's sauce, you are to imply such a promise under the terms of the agreement. Therefore, if you find by a preponderance of the evidence that the defendant did not use reasonable efforts to promote and market plaintiff's sauce, then the defendant will be liable to the plaintiff for his breach of the contract unless the defendant has shown by a preponderance of the evidence, one or the other of the affirmative defenses which have been raised."

No objections were raised to the giving of this instruction nor were additional instructions pertaining to requirements contracts requested. The jury returned a verdict in favor of plaintiff, concluding that defendant breached the exclusive dealings contract, and assessed damages at $4,185. Plaintiff thus had a judgment on an exclusive dealings contract.

The confusion between exclusive dealings and requirements contracts arose again, however, with this appeal. Defendant's assignments of error are based

---

[4] *See U.S. Fidelity v. Kaiser Gypsum Co.,* 273 Or 162, 539 P2d 1065 (1975); *Starkweather v. Shaffer,* 262 Or 198, 497 P2d 358 (1972).

upon the theory that the case was tried as a breach of a requirements contract.[5]

It is true that the complaint alleged both the existence of a requirements contract and the breach thereof. It is also true that a great deal of the trial was taken up with proving the existence of the requirements contract and its breach.

■ All of this is beside the point, however: the case was presented to the jury solely on the theory of a breach of an *exclusive dealings* contract, and any assignments of error arising out of the *requirements* contract theory are thus misdirected.

■ We deal first with defendant's contention that the trial court erred in overruling its demurrer. Defendant contends that the requirements contract pleaded in paragraph III is unenforceable under ORS 72.2010 for lack of a written quantity term. Comment 1 to ORS 72.2010 sets forth only three definite requirements that a written memorandum must meet to comply with this section:

(1) It must evidence a contract for the sale of goods;
(2) It must be signed; and
(3) It must specify a quantity.[6]

---

[5]Plaintiff, in his brief, falls into the same trap when he asserts that "the jury found a breach of a requirements and exclusive dealings contract."

Plaintiff goes on to suggest in his brief that the exclusivity language of the contract creates by implication a requirements contract. It does not. The requirements contract is established by parol evidence admitted to supplement the agreement; it is not established by implying its existence from the exclusive dealings language in the written contract.

[6]Defendant does not question that the signed written contract satisfies the first two requirements set out in Comment 1. However because we have narrowed our focus to the exclusive dealings contract and defendant's concomitant duty to promote and market plaintiff's sauce, it might be argued that what is at issue is a contract for services rather than a contract for the sale of goods. Hence the Code's provision on the Statute of Frauds would not apply. However, the essence of the contract here is the agreement for the sale of plaintiff's sauce; the agreement to promote and market the sauce is but a necessary incident to the contract for sale. *See Huyler Paper Stock Co. v. Information Supplies Corp.,* 117 NJ Super 353, 284 A2d 568 (1971).

[ 186 ]

Comment 1 also states:

> "The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated." Legislative Counsel Committee, Oregon Uniform Commercial Code, Comment 1, p 25 (1962).

Paragraph III of plaintiff's complaint does not show on its face whether the requirements agreement alleged therein was the same contract as the one alleged in paragraph II. Assuming the paragraph III alleges a *separate* contract—a matter not clarified by a motion to make more definite and certain—such separate contract could have been in writing and contained a quantity term.[7] Accordingly, the demurrer to the complaint could not have been sustained upon the ground that the Statute of Frauds had been violated. *Crone v. First National Bank,* 247 Or 395, 430 P2d 563 (1967).

■ Although raised and argued by defendant with respect to the alleged requirements contract, we will treat defendant's second assignment of error as applying to the exclusive dealings contract. Defendant relies on ORS 72.2010 and argues that the lack of a written quantity term renders this contract unenforceable under the Statute of Frauds. Accordingly, argues defendant, the court erred by not granting its motions for nonsuit and directed verdict.

With regard to an exclusive dealings contract, we find defendant's argument to be wide of the mark.

As noted, ORS 72.3060 is a statute designed, among other things, to define "quantity"—as that item is required by the UCC's own Statute of Frauds—in those situations in which, because of the nature of the contract, a particular quantity cannot be identified in

---

[7] In fact, parol evidence introduced at trial showed that paragraph III stated what plaintiff assumed the contract alleged in paragraph II actually meant.

advance with certainty. ORS 72.3060(2) speaks particularly to "exclusive dealings" contracts:

> "(2) A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale."

■ We construe ORS 72.3060(2) to provide the "quantity" term in an otherwise lawful exclusive dealings contract *as a matter of law:* the "quantity" the seller is obligated to supply is that amount which proof shows his best effort would have produced; the "quantity" a buyer is obligated to purchase is that amount which proof shows he would have used or required if he exercised his best efforts to utilize the product. No greater specificity is necessary.

The trial court correctly denied defendant's motions for nonsuit and directed verdict.

The judgment of the trial court is affirmed.