Argued March 10, affirmed as modified May 2, 1978

CHAMBERLAIN, *Respondent,*

*v.*

JIM FISHER MOTORS, INC. et al, *Appellants,*

*v.*

KNUTSON, *Respondent.*

(TC 420-966, SC 25082)

578 P2d 1225

Gary M. Bullock, Portland, argued the cause and filed the brief for appellants.

Charles P. Duffy, Portland, argued the cause for respondent Chamberlain. With him on the brief were Gary E. Rhoades and O'Donnell, Rhoades & Gerber, Portland.

John Spencer Stewart, Portland, argued the cause for respondent Knutson. With him on the brief were David R. Trachtenberg and Kobin & Meyer, Portland.

TONGUE, J.

Holman, J., concurring.

Lent, J., concurring in part; dissenting in part.

**TONGUE, J.**

This is an action by the purchaser of a used car against a used car dealer for damages resulting from the failure of the dealer to provide title to the car. The car was stolen, "stripped" and "totaled." Plaintiff's insurance company then refused to pay her claim for its loss because of her inability to produce a certificate of title to the car.

Prior to trial, the trial court entered a partial summary judgment on the issue of liability. At the conclusion of the testimony at the trial, the trial court directed a verdict in favor of plaintiff for compensatory damages in the sum of $1,724.09. Plaintiff's claim for punitive damages was submitted to the jury, which returned a verdict of $5,000 in punitive damages. The trial court also awarded attorney fees to the plaintiff in the sum of $2,500. Defendant appeals from the resulting judgment.

*The facts.*

On January 10, 1975, plaintiff stopped to look at a 1971 Maverick on the used car lot of defendant Jim Fisher Motors. Four days later, after obtaining a loan to finance its purchase, plaintiff purchased the car from defendant. At that time she asked when she would "get my plates." The car then had no license plates. She was told that "it would be anywhere from two to six weeks or something like that." Defendant did not then deliver to her a certificate of title to the car, but gave her a 60-day temporary registration "sticker" for the windshield.

In March, after not receiving "plates" for the car and when the temporary registration was about to expire, plaintiff went back to defendant and was told that "there had been a mix-up; that the title was lost in transit and that it would just take time to work out." She was then given another temporary registration. When that temporary registration was about to expire

in June plaintiff was given a third temporary registration, with no explanation of the reason for the delay.

In July the car was stolen and "stripped," so as to be a total loss. Plaintiff's insurance company refused to pay her claim for its loss because she was unable to produce a certificate of title to the car. Its representative testified, however, that upon receipt of a certificate of title it would pay the claim.

Defendant's employees testified that they were not aware of the provisions of ORS 481.315(3) providing that an automobile dealer must "have in his possession a duly assigned certificate of title or bill of sale from [its] registered owner" upon the sale of a used car. They also testified that because legal titles were often held by lien holders and because of the delay of from four to six weeks in making arrangements for the transfer of automobile titles, it was common practice to buy and sell used cars subject to the subsequent delivery of certificates of title.

In addition, they testified that they acquired this used car two weeks prior to its sale to plaintiff; that when they acquired the car they were given a bill of sale by the person from whom they acquired the car (who apparently was not its registered owner); that the car then had an Oregon temporary license, which "would be indicative that the title had been processed as required * * * for transfer [of title]"; and that they were also told by the "customer" that "the title was in transit."

Defendant's employees also testified that they then attempted to secure title to the car and later offered to "rescind the deal" and give plaintiff her money back. Plaintiff denied that any such offer was made to her.

On September 22, 1975, plaintiff filed this action against defendant for the value of the car, punitive damages and attorney fees. As of that date title to the car had not been delivered to her by defendant. At the time of trial, however, on January 4, 1977, defendant

produced title to the car and tendered it into court. That tender was rejected on objection by plaintiff.

*The court did not err in granting partial summary judgment and directed verdict.*

■ Defendant assigns as error the granting of "partial summary judgment" on the issue of liability. Defendant contends that this was improper because plaintiff's complaint seeks recovery under ORS 646.605 et seq., the Unlawful Trade Practices Act, based upon false representations to her by defendant "regarding the certificate of title"; that summary judgment is not possible under that act because in order to establish a violation of that statute based upon alleged misrepresentations it must be proved that defendant "knew or should have known" that such representations were false and that this is always a question of fact.[1] It appears, however, that plaintiff's motion for summary judgment on liability was not based upon ORS 646.605 et seq., but was based on the contention that defendant did not have in its possession a "duly assigned certificate of title or bill of sale from the registered owner" of the car at the time of its sale to plaintiff, as required by ORS 481.315(3), and that ORS 481.310(2) provides for a right of action by "any person [who] suffers any loss by reason of the violation of any of the provisions of that statute." There was apparently "no genuine issue as to any material fact" on that question. It follows that the court did not err in entering such a "partial summary judgment."

■ Defendant also contends that the trial court erred in directing a verdict in favor of plaintiff for compensatory damages in the sum of $1,724.09 because plaintiff "was under a duty to minimize her damages by availing herself of resources available"; that defendant "should not be required to answer in damages for the car's loss when all the owner was required

---

[1] ORS 646.605(9) provides as follows:

"A wilful violation occurs when the person committing the violation knew or should have known that his conduct was a violation."

to do once title had been obtained was to submit a claim to her insurance company for payment of the car's value," and that all that the insurance company "required to pay plaintiff's claim was a clear certificate of title," which was tendered into court at the time of trial, but rejected by the trial court. In support of this contention defendant cites *Blair v. United Finance Co.,* 235 Or 89, 91, 383 P2d 72 (1963).

In *Blair,* however, it was held by this court (at 91-92) that:

"* * * If, *at the time the liability-creating events occurred,* Blair reasonably could have avoided all or a part of the damages, than he cannot look to United for indemnity for such damages as were reasonably avoidable. * * *" (Emphasis added)

In this case there was no evidence that at the time of plaintiff's claim to the insurance company for the loss of her car after it was stolen on July 1, 1975, she could have produced title to the car, as required by the insurance company for payment of her claim. On the contrary, there was evidence that plaintiff filed a claim with her insurance company and that her claim was rejected by it because of her inability to produce title to the car as a result of defendant's continued failure to secure and deliver to her the title to the car. It was not until the day of trial on January 4, 1977, that defendant produced title to the car and tendered it into court. Under these facts the doctrine of "avoidable consequences" had no proper application.

Defendant does not contend on this appeal that the value of the car at the time that it was stolen was less than $1,724.09, or that the trial court erred in directing a verdict in favor of plaintiff in that amount in the event that the rule of "avoidable consequences" is not properly applicable. It follows that the trial court did not err in granting plaintiff's motion for a directed verdict.[2]

---

[2] For the same reasons, the trial court did not err in refusing to instruct the jury on the rule of "avoidable consequences" or in rejecting defendant's

*Punitive damages were not recoverable in this case.*

Defendant assigns as error the giving of an instruction to the jury on punitive damages which defined "wanton misconduct," for the purposes of an award of punitive damages, as including both a "deliberate" and a "reckless" disregard of the rights of others. Defendant also assigns as error the denial of its "motion to strike punitive damages."

In support of these assignments of error defendant contends that in order for an award for punitive damages to be proper in this case there must have been a "deliberate and calculated effort to misrepresent the facts." Defendant also contends that regardless of the basis for plaintiff's claim, "there is no evidence under any standard for the award of punitive damages"; that there was no evidence that defendant wilfully violated ORS 481.315(3), requiring title to an automobile to be in the possession of an automobile dealer at the time of purchase or sale;[3] that, on the contrary, the evidence was that because of delays in securing certificates of title from lien holders and because it usually takes from four to nine weeks to clear the transfer of title through the state Motor Vehicles Division, it was not uncommon in the industry to both purchase and sell used cars on promise of subsequent delivery of title; that this car, when acquired by defendant, had a temporary license sticker on its windshield and that defendant had a "bona fide bill of sale" from "the person who traded it to us"; and that defendant

tender of title at the time of trial, as also assigned as error by defendant. The trial court also did not err in refusing to instruct that this is not a case for rescission and that the jury could not consider the purchase price paid or plaintiff's obligations to her credit union, as also assigned as error by defendant.

[3] ORS 481.315(3) provides:

"* * * A licensee dealing in used vehicles shall also have in his possession a duly assigned certificate of title or bill of sale from the registered owner of the motor vehicle, trailer or semi-trailer from the time when the vehicle is delivered to him until it has been disposed of by him."

subsequently called the dealer who had sold the car to that person and was told that "the title was coming."[4]

Plaintiff contends that:

"There was ample evidence at trial that the Defendant-Appellant Fisher acted with a reckless indifference to the rights of the Plaintiff, that the societal interest was sufficiently great and that Fisher's failure to provide title to the used car purchased by Plaintiff is the type of conduct which sanctions would tend to prevent. * * *"

It does not appear from plaintiff's complaint that the basis for her claim to punitive damages was a wilful violation by defendant of ORS 481.310 in *selling* the car without an assigned certificate of title or bill of sale from the registered owner. Instead, plaintiff's claim for punitive damages is based upon the following allegations of its complaint:

"*Defendant made the foregoing representation* [that defendant "owned said automobile and had in its possession an assigned certificate of title to the automobile from its former owner"] to plaintiff willfully, and with reckless disregard for the rights of plaintiff, and therefore plaintiff is entitled to punitive damages." (Emphasis added)

Plaintiff's basic contention on this appeal is that punitive damages were properly awarded in this case because "punitive damages may be awarded in this state in all cases in which 'the violation of societal interests is sufficiently great and the conduct involved is of a kind that sanctions would tend to prevent,' " citing *Starkweather v. Shaffer,* 262 Or 198, 207, 497 P2d 358 (1972), and *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306 (1967), among other authorities.

---

[4]Defendant also contends that punitive damages could not be properly awarded in this case because ORS 481.310 makes no provision for punitive damages and because even though ORS 646.605 et seq., the Unlawful Trade Practices Act, provides for punitive damages, plaintiff was not entitled to recovery under that statute. Because of the basis upon which we deny recovery for punitive damages it is not necessary to consider these additional contentions.

Plaintiff also contends that she is entitled to recover punitive damages in this case because of the provision for punitive damages in the Unlawful Trade Practices Act. Plaintiff does not contend, however, that the provision of ORS 646.638(1) for awards of punitive damages for violations of that statute (as defined in ORS 646.605(9) to include conduct which a person "should have known" to be in violation of that statute) requires an award of punitive damages even when the misconduct of the defendant is not of such a nature as would otherwise properly support an award of punitive damages.[5] On the contrary, as previously noted, it is the contention of the plaintiff that defendant's misconduct was such as to satisfy requirements for an award of punitive damages under the rule as stated in *Starkweather v. Shaffer, supra,* and *Noe v. Kaiser Foundation Hosp., supra.*

In *Harrell v. Travelers Indemnity Co.,* 279 Or 199, 208-212, 567 P2d 1013 (1977), decided after the trial of this case, this court discussed some of the problems resulting from the extension of liability for punitive damages to cases in which there was no wanton misconduct or intentional infliction of injury, but in which defendant's conduct was grossly negligent or reckless. For those reasons, as stated in *Harrell,* we hold that gross negligence or recklessness is not, in and of itself, sufficient to support an award of punitive damages.

It follows, in our opinion, that it was not proper to instruct the jury in this case that "wanton misconduct," for the purpose of punitive damages, includes not only a "deliberate disregard" of the rights of

---

[5] ORS 646.638(1) provides:

"Any person who suffers any ascertainable loss of money or property, real or personal, as a result of wilful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, *may* award punitive damages and the court may provide such equitable relief as it deems necessary or proper." (Emphasis added)

others, but also a "reckless indifference to such rights." This case, however, was tried prior to our decision in *Harrell* and we do not consider this case to be an appropriate one in which to attempt to otherwise limit or redefine the nature of the misconduct which will properly support an award of punitive damages, as that rule was stated in *Noe v. Kaiser Foundation Hosp., supra.*

■ Even under a test which includes "gross negligence" and "recklessness," we do not believe that the circumstances under which defendant made the representation relied upon in this case as the basis for an award of punitive damages were such as to properly support such an award. We have, on previous occasions, set aside awards for punitive damages in cases in which, in our opinion, defendants' misconduct was not "sufficiently arbitrary and unconscionable to constitute a grievous violation of societal interests." *See Landauer v. Steelman,* 275 Or 135, 142, 549 P2d 1256 (1976); *Nees v. Hocks,* 272 Or 210, 220, 536 P2d 512 (1975); *Sumrell v. Household Finance Corp.,* 250 Or 381, 384, 443 P2d 179 (1968); and *Noe v. Kaiser Foundation Hosp., supra* at 427.

There was no evidence in this case that the defendant made an express representation that it "owned said automobile and had in its possession an assigned certificate of title" to it. The jury could properly have found that a representation that defendant owned said automobile was implied from the fact that defendant offered the car for sale, gave plaintiff a temporary registration, and told her that she would get her "plates" in from two to six weeks. It could not be properly implied from these facts, however, that defendant then had an assigned certificate of title in its possession. Of more importance, there was no evidence that when defendant sold the car to plaintiff it knew or had reason to know that there would be any difficulty in securing a certificate of title to the car.

Under these facts we hold that there was insufficient evidence to make it proper to submit to the jury the question whether, in making the representation relied upon by plaintiff as the basis for its claim to an award of punitive damages, defendant's conduct was such as to justify an award of punitive damages.[6] It follows that it was error to deny defendant's "motion to strike punitive damages."

*Attorney fees were improperly awarded.*

Defendant assigns as error the award of attorney fees to plaintiff. Defendant contends on this appeal that "[r]ecovery of attorney fees is not authorized by the terms of the dealer statutes, ORS 481.305 et seq.," and that although the Unlawful Trade Practices Act authorizes awards of attorney fees in actions under that statute, there was no violation of that statute or award of judgment under that statute in this case because recovery under it is limited to misrepresentation of "characteristics, * * * or qualities" of goods, which does not include misrepresentation of title or ownership.

Plaintiff contends, on the contrary, that her complaint sought recovery under the provisions of both the automobile dealer statutes, ORS 481.310 et seq. and also under the provisions of the Unlawful Trade Practices Act, ORS 646.605 et seq.; that "the court's award of attorney fees was based on ORS 646.638 and was proper"; and that, in any event, defendant not only expressly recognized by its memorandum that plaintiff's complaint "seeks relief under the Oregon Unlawful Trade Practices Act, ORS 646.605 et seq.," but "stipulated" that the court could set reasonable attorney fees and that during the course of the trial defendant's attorney made the following "judicial

---

[6] It is true that in selling the car to plaintiff without having an assigned certificate of title or bill of sale from its registered owner in its possession defendant violated ORS 481.310. As previously noted, however, that is not the basis for plaintiff's claim for punitive damages, as alleged in her complaint.

[ 239 ]

admission" that plaintiff's attorney had a right to attorney fees:

> "MR. BULLOCK: Could I say something? He has a right to damages. The Court has held that. The Court held that in the *Scott v. Western International Sales, Inc.,* case. He has a right to $200; plus, *he has a right to attorney's fees.* There is no question. * * *
>
> "\* * * * *
>
> "\* * * So, my position is that the damages that she has got in this case are $200 under the Unlawful Trade Practices Act, *plus attorney's fees,* and plus whatever the Court determines relating to the question of punitive damages that goes to the jury." (Emphasis added)

We recognize that plaintiff's complaint was based upon both ORS 481.310 et seq. (which does not provide for attorney fees) and ORS 646.605 et seq. (which does provide for attorney fees). As previously held, however, we have affirmed plaintiff's right to recovery under ORS 481.310, rather than under ORS 646.605.

It necessarily follows from the basis upon which we decide this case that a misrepresentation of title or ownership of an automobile is not a misrepresentation of "characteristics, * * * or qualities" of goods for the purposes of ORS 646.608(1)(e). We have examined the legislative history of ORS 646.605 et seq. and find no expression of a contrary intent by the legislature in the adoption of that statute.

As for the statements by defendant's attorney claimed by plaintiff to be "judicial admissions," it appears to us that those statements were made in connection with the entry of a possible judgment under the Unlawful Trade Practices Act (ORS 646.605 et seq.) because he coupled the statements with mention of the automatic judgment of $200 which is allowable under the provisions of ORS 646.641. Because, however, plaintiff's judgment has been affirmed under ORS 481.310 et seq., rather than under ORS 646.605 et seq., we do not believe that those statements by defendant's attorney provide a proper

basis for an award of attorney fees. It follows, in our opinion, that the trial court erred in its award of attorney fees to the plaintiff in this case.

*The court did not err in ordering a separate trial of defendant's third party complaint.*

■ Finally, defendant assigns as error the order for a separate trial of defendant's third party complaint against Mr. Knutson, from whom defendant purchased the car prior to its resale to plaintiff.

ORS 16.315(5) provides:

"Upon motion of any party, the court may order a separate trial of any counterclaim, cross-claim or third-party claim so alleged if to do so would:
"(a) Be more convenient;
"(b) Avoid prejudice; or
"(c) Be more economical and expedite the matter."

This statute, by its express terms, confers discretion on the trial judge to order the separate trial of such a third party complaint whenever, in his best judgment, to do so would be "more convenient," "avoid prejudice" or be "more economical" and "expedite the matter." *See Rhoades v. Harwood,* 280 Or 399, 404, 571 P2d 492 (1977); and *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 356, 546 P2d 1065 (1976).

It appears from the record in this case that the trial court was of the opinion that the two trials "should be segregated because of possible prejudice one way or the other in the trial of the case; much of which has been brought out during discussion off the record." On this record, we cannot say that the trial court abused its discretion and we disagree with defendant's contention that the order was improper because "[t]he trial court's ruling fails to disclose what, if any, prejudice would be avoided by separate trials."

The judgment of the trial court is affirmed, except for the award of punitive damages and attorney fees.

**HOLMAN, J.,** concurring.

The majority opinion upholds the judgment against defendant on the basis of a violation of its obligation to "have in its possession a duly assigned certificate of title or bill of sale from [its] registered owner," as required by ORS 481.315(3) which, in turn, caused plaintiff to be unable to produce to her insurance company a certificate of title. I concur in this holding only because defendant has not contended that its failure to produce the title was not the cause of plaintiff's loss. Obviously it was not, because plaintiff's insurance company could not legally refuse to pay as long as plaintiff had paid value for the vehicle and thereby had an insurable interest. The legal cause of her loss was the insurance company's failure to comply with its obligation to pay for plaintiff's loss and not her failure to produce the title. If plaintiff could legally collect against her insurance company without the certificate, defendant's failure to produce the certificate was not the cause of her loss.

**LENT, J.,** concurring in part, dissenting in part.

I concur in those parts of the majority opinion in which (1) the judgment for compensatory damages is affirmed, (2) the award of attorney fees is disallowed, and (3) the segregation of trials is approved. I respectfully dissent from a part of the majority discussion concerning the judgment for punitive damages. I agree with the majority (as I understand the opinion) that this case is not governed by the Unlawful Trade Practices Act.

I respectfully dissent from that portion of the majority opinion regarding the issue of punitive damages, which commences with the sentence:

"* * * For those reasons, as stated in *Harrell,* we hold that gross negligence or recklessness is not, in and of itself, sufficient to support an award of punitive damages. * * *"

[ 242 ]

My first reason for this dissent is that I believe the quoted language is unnecessary to the decision of this case. My second reason is that I do not understand the distinction between "wanton misconduct" and conduct which is "grossly negligent or reckless."[1] My third reason is that I do not perceive what additional facts would be necessary "to support an award of punitive damages" where the conduct of the defendant amounts to no more than "gross negligence or recklessness." Perhaps the majority believe that it is the consequences of reckless conduct which would permit an award of punitive damages. I cannot conceive of a situation in which the plaintiff would be entitled to go to the jury on general damages under 1 Restatement of Torts 2d, § 46 (Outrageous Conduct Causing Severe Emotional Distress) where the jury should not also be empowered to award punitive damages. Yet under § 46 one may be liable for recklessly inflicting severe emotional distress as well as intentionally inflicting severe emotional distress. *See* Comment *i*:

> "The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow."

In addition to my misgivings concerning the meaning of the language quoted from the majority opinion, I note the conscious choice of the elected representatives of the people of this state, namely the legislature, to permit the trier of fact to award punitive damages for conduct which would ordinarily amount to simple negligence only. The Unlawful Trade Practices Act, ORS 646.605 to 646.652, provides for the allowance of

---

[1] I believe this state is committed not only with respect to the guest passenger law but with respect to the general law to the proposition that gross negligence is synonymous with recklessness. *See Williamson v. McKenna,* 223 Or 366, 354 P2d 56; ORS 161.085(9); 2 Restatement of Torts 2d, § 500. *Compare Falls v. Mortensen,* 207 Or 130, 295 P2d 182 (1956); *Cook v. Kinzua Pine Mills Co. et al,* 207 Or 34, 293 P2d 717 (1956).

punitive damages for what appears to be "ordinary negligence." ORS 646.638 permits an award of punitive damages against one who engages in an unlawful practice proscribed by ORS 646.608 if the person perpetrating the unlawful trade practice "knew or should have known that his conduct was a violation." ORS 646.605(9).

I realize that this case is not truly concerned with an unlawful trade practice, although the parties, one or the other, have tangentially treated it as if it were. If it were truly to be governed by the Unlawful Trade Practices Act, this case would not and should not by reason of statute permit this court to reject an award of punitive damages by the trier of fact.

I discern a tendency in the decisions of this court to limit the situations in which a trier of fact may award punitive damages at the same time that the people of this state, speaking through their elected representatives in the legislative assembly, seek to impose sanctions upon proscribed conduct by permitting the victims of such conduct to recover punitive damages. *See, e.g.,* the Unlawful Trade Practices Act, *supra*; the Oregon Antitrust Law, ORS 646.705 to 646.805; the Antiprice Discrimination Law, 646.010 to 646.180. It is true that sometimes the legislature refers to this kind of damages as treble damages; nevertheless, the effect is to impose punitive damages. Why the tender concern of this court for the plight of the grossly negligent or reckless wrongdoer escapes me.

In this case the defendant had in its possession neither a "duly assigned certificate of title" nor a "bill of sale from the registered owner" of the car at the time of its sale to plaintiff. If the trier of fact were to find that this conduct on the part of the defendant amounted to recklessness, I would hold that the trier of fact should be permitted in its sole discretion to award punitive damages.

Insofar as the separate opinion of Justice Holman is concerned, I simply wish to note my concern as to whether one who has "paid value for the vehicle" has an insurable interest.