Argued and submitted November 17, 1982, affirmed in part, reversed in part and remanded with instructions March 2, 1983

# FIDELITY AND DEPOSIT COMPANY OF MARYLAND,
*Appellant,*

*v.*

# GREENLEE et al,
*Respondents.*

(124789; CA A24180)

660 P2d 172

Mildred J. Carmack, Portland, argued the cause for appellant. With her on the briefs were Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Myron L. Enfield, Salem, argued the cause and filed the brief for respondent Lloyd Weigel.

Dan W. Poling, Depoe Bay, waived appearance for respondents Lee and J. H. Greenlee.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff appeals from a judgment dismissing its action against defendants,[1] principals under a surety bond issued by plaintiff, for indemnity in the amount paid by plaintiff to a claimant under the bond.

Defendants Greenlee and Weigel owned and operated United States Mobile Sales, Inc., selling used mobile homes. Plaintiff issued a motor vehicle dealer bond to Mobile Sales pursuant to ORS 481.310; each of the defendants, as individuals, executed the indemnity agreement that was part of the bond application. While the bond was in force, Mobile Sales sold a mobile home to a Mr. and Mrs. Frank for $17,500. At the time of the sale, Mobile Sales did not possess a certificate of title to the mobile home but did have a document entitled "Sales-Purchase Agreement," under which it agreed to purchase the mobile home from Darla Martin, subject to a mortgage, which it assumed. At the time of the sale to the Franks, the mortgage remained unpaid and the certificate of title was in the possession of the mortgagee. Mobile Sales made the mortgage payments until December, 1979, when it became financially unable to continue them. The Franks were advised at the time of the sale that Mobile Sales was making mortgage payments on the mobile home.

On April 1, 1980, the Franks made a claim on the bond for the outstanding mortgage balance, and on April 9 plaintiff notified defendants. Defendant Weigel requested that the claim not be paid. In October, 1980, plaintiff paid the Franks $11,630.24, the amount then due on the mortgage, and demanded payment from defendants. Defendants refused to reimburse plaintiff, contending that Mobile Sales was not liable to the Franks and that, even if it were liable, plaintiff did not have the right to pay the claim, because defendant Weigel had requested that it be litigated.

---

[1] After plaintiff rested its case, it advised the court it had not established a *prima facie* case against defendant J. H. Greenlee, and moved for a voluntary nonsuit as to him. The other defendants rested and moved to dismiss the complaint as to them. The trial court took the case under advisement, granted the motions and entered a judgment dismissing the complaint against all of the defendants and awarding costs to each of them.

Although several issues are raised, we consider only two: (1) whether Mobile Sales violated ORS 481.315(3), thereby making plaintiff liable on its bond, and (2), if so, whether plaintiff's refusal to comply with Weigel's request that the claim not be paid and offering to pay for litigation arising from the refusal precludes plaintiff from obtaining indemnity.

ORS 481.310[2] requires dealers to execute a bond for $15,000, conditioned on the dealer's conducting its business without fraud and without violating any of the provisions of chapter 481. The statute gives a right of action against the dealer and the surety to a person suffering any loss or damage due to fraud or violation of chapter 481.

Plaintiff contends that it became liable on its bond as a result of defendants' breach of ORS 481.315(3), which so far as relevant, provides:

"* * * A licensee dealing in used vehicles shall also have in his possession a duly assigned certificate of title or bill of sale from the registered owner of the motor vehicle, trailer or semitrailer from the time when the vehicle is delivered to him until it has been disposed of by him."

It is conceded that Mobile Sales did not have the certificate of title; the issue is whether the document entitled "Sales-

---

[2] ORS 481.310 provides:

"(1) The bond mentioned in ORS 481.305(3)(b) shall have a corporate surety licensed to do business within this state. The bond shall be executed to the State of Oregon in the sum of $15,000, unless the applicant desires to engage in the business of buying, selling or dealing exclusively in motorcycles or mopeds, in which case the sum shall be $2,000. It shall be approved as to form by the Attorney General, and be conditioned that the applicant, if a license is issued to the applicant, shall conduct business as a dealer without fraud or fraudulent representation and without violating any of the provisions of this chapter.

"(2) If any person suffers any loss or damage by reason of the fraud, fraudulent representations or violation of any of the provisions of this chapter by a licensed dealer, the person has a right of action against such dealer and a right of action in the person's own name against the surety upon the bond.

"(3) All bonds given under the provisions of ORS 481.305(3)(b) shall be filed and held in the office of the division. If the bond is canceled by legal notice, the license of the dealer shall be canceled immediately by the division. If the license of a dealer is not renewed or is voluntarily, or involuntarily canceled, the sureties on the bond shall be relieved from liability accruing subsequent to such cancellation by the division.

"(4) A person who violates any provision of this section commits a Class A misdemeanor."

Purchase Agreement," which the dealer had in its possession, was a bill of sale. The trial court held that it was a bill of sale within the meaning of the statute.

■   Although there is no statutorily required form, a bill of sale must show a *present* transfer of the title to property for consideration. *Hull v. Ray,* 80 Cal App 284, 251 P 810, 812 (1926); *Putnam v. McDonald,* 72 Vt 4, 47 A 159 (1899). The document[3] that Mobile Sales had did not transfer the title to the property; it is an agreement to sell under certain specified conditions, that required future performance by Mobile Sales, some of which apparently was not done. It is clear enough that the agreement authorized and contemplated that Mobile Sales would sell the mobile home; however, it is also clear that Mobile Sales was to pay off "all encumbrances in full." Apparently, it was contemplated that title would not pass until that was done. Because the encumbrances were not paid in full, title never did pass to Mobile Sales.

■   In *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978), the court held that failure of the dealer to have a certificate of title or a bill of sale from the registered owner at the time of sale gives rise to a right of

---

[3] The "Sales-Purchase Agreement" provides:

"THIS AGREEMENT made between Darla R. Martin hereafter known as the first party and Lee Greenlee President of U.S. MOBILE SALES INC. hereafter known as the second party;

"WHEREAS first party agrees to sell to the second party a certain 1975 HOMETTE Mobile Home 24 X 52 located at 4370 Sunnyvics Ave. NE, Salem, Oregon complete with range, refrigerator, skirting, all existing curtain, drapes, carpeting and 200 Amp Electrical service with pole, for the sum of FIVE HUNDRED DOLLARS ($500) plus assumption of mortgage balance to PEOPLES MORTGAGE CO. of Seattle, Washington; assumption of all unpaid personal property taxes thereon to Marion County, Oregon; assumption of all unpaid and future land rental to Christian Center, Salem, Oregon; assumption of unpaid and future PGE Electric bills, all assumptions effective this date. The provision for payment of the aforementioned FIVE HUNDRED DOLLARS is to be paid immediately upon sale of above described mobile home but in any event not later than April 1, 1979.

"WHEREAS second party agrees to all of the foregoing terms and conditions and it is further agreed between first and second parties that second party shall make all mortgage payments in behalf of first party on the date due as set forth in the original contract of purchase as executed by first party, the first payment to be made by the second party on March 1st, 1979, and to continue until sold at which time second party agrees to pay all encumbrances in full."

action by the purchaser as a matter of law. Because we conclude that the document in question is not a bill of sale, Mobile Sales violated ORS 481.315(3). Accordingly, the Franks had a right of action against Mobile Sales and its surety. Because one violation of chapter 481 is all that is required to trigger liability of the surety under ORS 481.310, we need not reach plaintiff's argument that ORS 481.405 was also breached by Mobile Sales' failure to deliver a certificate of title to the Franks.

■     However, one issue remains. Defendant Weigel contends that because he, as an indemnitor, requested plaintiff "to litigate the claim or demand or defend such suit * * *," plaintiff should not have paid the claim. The bond provided:

> "* * * THIRD, that the Company shall have the right, and is hereby authorized, but not required: (a) to adjust, settle or compromise any claim, demand, suit or judgment upon said bond, unless the undersigned shall request the Company to litigate such claim or demand or defend such suit or to appeal from such judgment, and shall deposit with the Company collateral satisfactory to it in kind and amount; * * *."

It is clear that plaintiff had the right to pay the claim unless defendants, or one of them, in addition to asking plaintiff to litigate the claim, deposited with plaintiff "collateral satisfactory to it in kind and amount." Weigel made no such deposit; he did offer to defend the case himself. However, the mere offer to defend and to pay expenses incurred in litigation is not a deposit of collateral and does not comply with the express condition of the agreement. Therefore, we conclude that plaintiff had the right to pay the claim.

Affirmed as to defendant J. H. Greenlee; reversed and remanded for entry of judgment against defendants Weigel and Lee Greenlee.[4]

---

[4] There is no contention that defendant Lee Greenlee requested plaintiff to litigate the claim. Plaintiff concedes that it has not made a case against defendant J. H. Greenlee.