Argued and submitted July 1, affirmed in part, reversed in part and remanded for new trial October 27, 1981

WOLF, by his guardian ad
litem Marvin Wolf,
*Petitioner,*

*v.*

NORDSTROM, INC.,
*Respondent.*

(CA 17116, SC 27808)

637 P2d 1280

Raymond J. Conboy, Portland, argued the cause and filed briefs for Petitioner. With him on the briefs were Garry L. Kahn and Raymond J. Conboy, Portland.

Katherine H. O'Neil argued the cause and filed briefs for the Respondent. With her on the briefs were Schwabe, Williamson, Wyatt, Moore & Roberts and Mark H. Wagner, Portland.

Before Denecke, Chief Justice, Lent, Linde, Peterson and Campbell, Justices.

CAMPBELL, J.

Peterson, J., filed a specially concurring and dissenting opinion.

## CAMPBELL, J.

Plaintiff, a young boy, brought this action through his guardian ad litem for false imprisonment and battery in connection with his detention by defendant's employee as a shoplifting suspect. The trial court granted a directed verdict against defendant on the defense of probable cause to detain and set aside the jury's award of punitive camages on the false imprisonment claim.[1] Plaintiff appealed the court's action in setting aside the jury verdict for punitive damages. Defendant cross-appealed alleging error in the jury instruction on punitive damages, in the directed verdict against defendants on the defense of probable cause to detain and in the failure to instruct the jury on the statute governing probable cause, ORS 131.655. The Court of Appeals affirmed. We affirm as to the statutory instruction and the directed verdict. We reverse as to the setting aside of the jury verdict for punitive damages and remand for new trial on that issue only.

On June 21, 1978, a shoplifting incident occurred at defendant's store in downtown Portland. At approximately 1:10 p.m., defendant's security officer, Laura Plymale, arrived at the scene of the incident and saw two young boys, one wearing a new pair of white tennis shoes belonging to the store. A later-written description of the shoplifter showed him to be 13 years old, white, with brown hair and brown eyes, 5'3" tall, weighing 120 pounds, and wearing blue jeans, a green jacket, a baseball cap, and the stolen new white tennis shoes. The boys broke away from the clerk detaining them and ran for the nearest exit. Ms. Plymale followed the boys, pausing at the entrance to ask another employee, Mr. Bailey, for help in her pursuit. The chase ended two blocks southwest of the store with her apprehension of both boys.

At 1:15 p.m., plaintiff was entering an indoor shopping mall two blocks northwest of defendant's store to meet his mother. Plaintiff generally fit the later description of the shoplifter except he wore no hat, was alone rather than

---

[1] Plaintiff recovered a verdict for $5,000 general damages and $15,000 punitive damages. The general damages award is not before us except as it relates to defendant's cross-appeal.

with another boy, wore old, beat-up white tennis shoes, and was nowhere near defendant's store or the shoplifter's flight path therefrom. As he searched for an elevator to his mother's office on the building's fourth floor, two men rushed up to him.[2] One of the men, Mr. Calhoun, asked plaintiff if he had been in defendant's store in the past five minutes, to which plaintiff answered no. Mr. Calhoun then grabbed plaintiff by the waistband of his trousers "and said 'come with me because I have some questions for you.' " At no time did either man identify himself to plaintiff or show any identification from defendant's store. Mr. Calhoun marched plaintiff out of the building without telling him where they were going, despite plaintiff's tearful protests. Plaintiff attempted to escape his captor and was restrained. Before leaving the building, plaintiff told Mr. Calhoun that his mother worked in the building to which Mr. Calhoun responded, "Oh." Plaintiff was forced to walk the two blocks to defendant's store. Upon their arrival at the store at about 1:35 p.m., it was determined that plaintiff was not the shoplifter and he was released with apologies. Plaintiff returned to his mother's office.

The issue in this case is whether the jury's verdict for punitive damages on the false imprisonment count was properly set aside by the trial court.

The policy underlying awards of punitive damages and the primary justification for use as a guide to determining the propriety of awards for punitive damages was expressed in *Noe v. Kaiser Foundation Hospital,* 248 Or 420, 435 P2d 306 (1967):

> "Punitive damages can only be justified on the theory of determent. See Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.) it is apparent that this court has decided that it is proper to use the sanction of punitive

---

[2] The identity of the second man was not disclosed by the evidence, therefore we do not know that it was or was not Mr. Bailey.

damages where there has been a particularly aggravated disregard * * * [of the rights of the victim]." (As interpreted in *Crooks v. Payless Drug Stores,* 285 Or 481, 592 P2d 196 (1979).

The parties have focused their arguments on two cases decided by this court: *Lukas v. J. C. Penney Co.,* 233 Or 345, 378 P2d 717 (1963), and *Fabish v. Montgomery Ward and Co.,* 276 Or 29, 553 P2d 1057 (1976). We find *Fabish* to be more in line with the facts before us in this case.

In *Lukas,* the plaintiff and her granddaughter were in defendant's store shopping for a dress. A clerk became suspicious that plaintiff concealed a dress belonging to the store in her shopping bag and so alerted defendant's security officer. Plaintiff left the store but was followed and detained by a security officer about a half block from the store. The officer refused to identify himself on plaintiff's request and engaged in a scuffle with plaintiff for about two minutes in an attempt to search the shopping bag. Plaintiff ultimately allowed the search and, when the officer found nothing, was released. The court found that there was insufficient evidence of "particularly aggravated disregard" to justify submission of the punitive damage issue to the jury. The case before us is not sufficiently similar in its facts to make *Lukas* controlling. In *Lukas,* the plaintiff was an adult woman who was detained only two minutes in the proximity of the store after being followed there by a store employee. She was told of the object of the detention, namely, to search her shopping bag. She was not personally restrained at any point, and could have avoided the scuffle by allowing the search to take place. There was no question that she was the person pointed out by the clerk as the shoplifting suspect.

In the case before us, the detention was of a thirteen year old boy for some 20 minutes with defendant's employee neither identifying himself nor informing plaintiff of his objective in the detention. Plaintiff was not in the flight path of the true shoplifter, nor was he seen by his captor in defendant's store. Rather, defendant's employee travelled in the opposite direction from the chase to a building two blocks from defendant's store and detained

plaintiff, who did not even match the description later given by the security officer. The employee forced plaintiff to accompany him to defendant's store, unlike the summary search performed in *Lukas,* and despite the clear absence of the allegedly stolen tennis shoes from plaintiff's possession. The *Lukas* case is distinguishable from the case before us and does not control our decision.

■ In *Fabish,* plaintiff was detained for over an hour in defendant's store on suspicion of theft of a book. Plaintiff repeatedly asked to make a phone call to establish his purchase of the book from another store and thereby clear himself of the shoplifting charge. His requests were denied. The court found these facts sufficient to justify an award of punitive damages to deter this type of conduct and upheld the trial court's refusal to withdraw the issue from the jury. The facts before us are sufficiently similar to *Fabish* to justify a similar result. We hold that conduct such as that of the defendant's employee here, involving a child, an illogical pursuit, and an aggravated mode of detention, justifies the submission of the punitive damages issue to the jury, and that the trial court erred in withdrawing the jury verdict for punitive damages.

■ Defendant, as cross-appellant, contended that "(t)he court erred in directing a verdict against defendant on the issue of probable cause to detain plaintiff." We review the evidence in the light most favorable to the defendant, against whom a directed verdict was granted. *City of Rogue River v. DeBoer,* 288 Or 485, 605 P2d 697 (1980). The directed verdict was proper only if there was no evidence that defendant had probable cause to detain plaintiff or there was no conflict in the evidence and it was capable of only one construction. *Id.*

The parties agree that there was no conflict in the evidence and that the issue of probable cause was therefore for the court. *Lukas v. J. C. Penney Co.,* 233 Or 345, 357, 378 P2d 717 (1963). We must address defendant's contention that, as a matter of law, the court's finding of no probable cause was error.

The statue requiring probable cause for detention of a shoplifting suspect is ORS 131.655, which provides:

"(1) Notwithstanding any other provision of law, a peace officer, merchant or merchant's employe who has probable cause for believing that a person has committed theft of property of a store or other mercantile establishment may detain and interrogate the person in regard thereto in a reasonable manner and for a reasonable time.

"(2) If a peace officer, merchant or merchant's employe, with probable cause for believing that a person had committed theft of property of a store or ther mercantile establishment, detains and interrogates the person in regard thereto, and the person thereafter brings against the peace officer, merchant or merchant's employe any civil or criminal action based upon the detention and interrogation, such probable cause shall be a defense to the action, if the detention and interrogation were done in a reasonable manner and for a reasonable time."

■ Ms. Plymale was defendant's only witness. Her testimony is insufficient to establish probable cause to detain because Ms. Plymale was not present at the scene of the detention. Neither Mr. Calhoun nor Mr. Bailey testified. Since Ms. Plymale's testimony did not establish any connection between plaintiff and the alleged shoplifter, we find that the directed verdict was proper. *Wagner v. Kaiser Foundation Hospital,* 285 Or 81, 589 P2d 1106 (1979); *Hansen v. Bussman,* 274 Or 757, 549 P2d 1265 (1976). The trial court properly directed a verdict against defendant on the issue of probable cause to detain. Since the directed verdict was proper, defendant was not entitled to a jury instruction regarding its defense to liability under ORS 131.655(2).

Defendant also assigns as error the trial court's jury instruction on punitive damages.[3] In particular,

---

[3]

"If you have found that the plaintiff is entitled to general damages, you may then consider whether to award punitive damages. Punitive damages are awarded to the plaintiff in addition to general damages in some cases in order to discourage the defendant and others from engaging in wanton misconduct.

"Wanton misconduct is conduct amounting to a deliberate disregard of the rights of others, or a reckless indifference to such rights.

"In considering punitive damages, you must first determine whether the defendant was guilty of wanton misconduct, which was the cause of damage to the plaintiff.

"If you decide to award punitive damages, you may properly consider the following items in fixing the amount: the character of the defendant's

defendant argues that the instruction defining "wanton misconduct" as "conduct amounting to a deliberate disregard of the rights of others, or a *reckless indifference* to such rights" (emphasis added) violates the standard for punitive damages set by this court in *Chamberlain v. Jim Fisher Motors, Inc.*, 282 Or 229, 578 P2d 1225 (1978). In addition, defendant objects to the trial court's refusal to give his requested jury instruction.[4]

 This court in *Chamberlain* held that recklessness, by itself, will not support an award of punitive damages. Although recklessness may be a part of aggravating circumstances which justify an award of punitive damages, the trial judge erred in instructing the jury on recklessness alone as sufficient to justify an award of punitive damages. We cannot determine the standard actually used by the jury in arriving at its verdict for punitive damages and must therefore remand this case for retrial on the issue of punitive damages. *Weiss v. Northwest Acceptance Corp.*, 274 Or 343, 546 P2d 1065 (1976); *Maxwell v. Port. Terminal RR. Co.*, 253 Or 573, 456 P2d 484 (1969). Since the trial court's directed verdict was proper, we find this case to be exceptional and not within the general rule of *Maxwell* that retrial should be on all factual issues. The court did not err in refusing to give defendant's requested instructions, however, since it misstates the law governing punitive damage awards by requiring "malice and intentional ill will towards plaintiff."

---

conduct, the defendant's motives, and the amount of damages which would be required to discourage the defendant and others from engaging in such conduct in the future."

[4]

"Before it would be appropriate for you to consider punitive damages, you would need to find that plaintiff has proven by a preponderance of the evidence that defendant, through specific agents or employees, was motivated by malice and intentional ill will towards plaintiff. Only if you find that plaintiff has established these elements would you be permitted to even consider punitive damages.

"Even then, you would not be required to award punitive damages, but it would be a matter for your own discretion, bearing in mind that punitive damages are disfavored by the law.

"If you find that the defendant's conduct was unlawful but that it resulted from good faith mistake, you would not be permitted to award punitive damages."

The judgment of the trial court directing a verdict for plaintiff on the probable cause defense is affirmed. The withdrawal of the punitive damages award is reversed and the case remanded for a new trial on the punitive damages issue.

**PETERSON, J.,** specially concurring and dissenting.

I concur with the result of the majority opinion except for the provision for a retrial on the punitive damages question alone. I would remand for a trial on all damage issues, with liability directed in favor of the plaintiff. My reasons are these:

1. Most of the evidence which is relevant to the determination of the award of general damages is also relevant to the determination of punitive damages, if any, to which the plaintiff is entitled. Much of the evidence relevant to the punitive damages issue is also relevant to the general damages issue. Where issues are interwoven, an error which affects one of the issues may as well affect the other. As a result, following reversal on appeal, the new trial should not be limited to one issue.

2. The remand for a retrial as to punitive damages only would save neither time nor expense; indeed, a trial of such a segregated issue might well add to the difficulties encountered on the retrial.

3. The award of general damages may have affected the award of punitive damages; and the award of punitive damages may have affected the award of general damages.

I have carefully reviewed the evidence set forth in the majority opinion on pages 830-31 to determine whether all, most, or any part of that evidence is relevant to the issue of punitive damages as well as general damages. It strikes me that, at a retrial limited to punitive damages only, one party or the other will attempt to offer almost all of the same evidence that was offered in the original trial. The plaintiff's attorney will offer (1) all of the evidence as to the original occurrence involving the two boys, in order to create a foundation for a claim of wanton misconduct so far

as the plaintiff is concerned; (2) evidence of the manner in which plaintiff was seized and detained; and (3) the effect of the occurrence upon the plaintiff. The plaintiff will attempt to offer virtually all of the factual evidence set forth on pages 830-31 of the majority opinion in order to claim that the defendants were treating him in an inhumane, callous, cavalier, wanton manner.

The defendants, on the other hand, will attempt to offer much of the factual evidence set forth on pages 830-31 of the majority opinion in order to show that they were well motivated, and that once it was learned that the plaintiff was the wrong person, "he was released with apologies."

The issues relating to general damages and punitive damages are closely connected and are interwoven. If the same evidence relates to both issues, one jury should properly decide both issues.

A retrial limited to punitive damages alone would neither simplify, shorten, nor reduce the expense of a retrial. Indeed, a retrial limited to punitive damages only might lead to difficulties which would not be encountered if the trial were limited to the determination of general damages and punitive damages.

Finally, I am fearful that the determination of punitive damages may have influenced the determination of general damages. Or the reverse may be true. Granted, at the first trial the trial jury was instructed that they should determine the amount of general damages, if any, to which the plaintiff was entitled, and that such damages be "such a sum as will reasonably and fairly compensate the plaintiff for the injuries so caused [including, but not limited to] the general damages for the period for which the actual restraint continued, anxiety, nervousness, mental anguish or suffering resulting from the wrongful act, including humiliation and injury to the feelings of the plaintiff." Then, the jury was instructed as to the law as to the general damages instruction. We should assume, and generally do assume, that juries follow the instructions. However, as we observed in *Maxwell v. Port. Terminal RR. Co.*, 253 Or 573, 577, 456 P2d 484 (1969), "* * *

[i]n the ordinary two-party personal-injury case * * * evidence of fault can influence the jury's measurement of damages; and the kind and degree of injuries may influence some jurors in their evaluation of the evidence on liability. * * *" In *Maxwell* we therefore refused to remand for trial on the question of damages only. Because the damage questions herein are so closely connected I fear that the determination of one may have influenced the jury's determination of the other.

I have set forth in the margin a listing (which I believe to be virtually complete) of all the cases in which the propriety of a remand for trial on a limited issue has been discussed.[1] As far as I can tell, the precise issue presented in this case has never arisen. Almost all of the cases cited in the margin involved the question of whether there should be a retrial as to damages, alone,[2] or whether the case should be remanded for trial on liability as well as damages. Where the evidence relevant to liability had no relevance to the question of damages, a limited trial was ordered in some of the cases.

But where the issues are as closely connected and interwoven as are the issues of general damages and punitive damages herein, when the evidence was relevant to both issues, as is the case here, and where there would be no savings of time or expense in remanding for a trial on one issue only, I favor a retrial on both issues. I know not whether this favors the plaintiff or the defendant, but I am convinced that because the evidence relevant to one type of damages may well have affected the award of the other type of damages, retrial on both issues should be ordered.

Denecke, C. J., joins in this opinion.

---

[1] *Weiss v. Northwest Acceptance Corp.,* 274 Or 343, 546 P2d 1065 (1976); *Chopp v. Miller,* 264 Or 138, 504 P2d 106 (1972); *Maxwell v. Port. Terminal RR. Co.,* 253 Or 573, 456 P2d 484 (1969); *Skultety v. Humphreys,* 247 Or 450, 431 P2d 278 (1967); *Western Feed Co. v. Heidloff,* 230 Or 324; 370 P2d 612 (1962); *Brown v. Bonesteele, 218 Or 312, 344 P2d 928 (1959);* Scott v. Brogan, 157 Or 549, 73 P2d 688 (1937).

[2] *See,* however, *Weiss v. Northwest Acceptance Corp., supra,* n 1, where retrial was ordered on the punitive damage question only. The case is arguably distinguishable because the other damage claim, for lost wages, was in the nature of a liquidated claim for special damages. It does not appear that the propriety of the new trial order, limited to punitive damages only, was questioned.