Argued and submitted January 19, reversed and remanded with instructions in part, affirmed in part March 2, 1983

McGREGOR et ux,
*Respondents,*
*v.*
BARTON SAND & GRAVEL, INC. et al,
*Appellants.*

(80-01-390; CA A23548)

660 P2d 175

Anna M. Moran, Portland, argued the cause for appellants. With her on the briefs was Breathouwer & Gilman, Portland.

Robert J. Miller, Portland, argued the cause for respondents. With him on the brief were Myron Schreck, and Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this action alleging trespass, nuisance, negligence and ultrahazardous activity, arising out of the spillage and sliding of water and debris onto plaintiffs' property from artificial ponds located on defendants' property and used in connection with defendants' gravel mining operations. The trial court submitted only the trespass and ultrahazardous activity counts to the jury.[1] Plaintiffs were awarded general damages for injury to property and emotional distress, special damages and punitive damages. Defendants appeal. We reverse and remand for a new trial on the issue of punitive damages.

Defendants Laughery bought the gravel quarry site in 1972 and incorporated defendant Barton Sand & Gravel, Inc. to conduct business operations. At the time of the purchase, there was one naturally fed pond on the site, which defendants supplemented with two artificial ponds for use in cleaning gravel. Subsequently, Laughery sold the corporation and leased the site to G. D. Dennis & Sons, Inc. (Dennis). Dennis encountered financial difficulties, which resulted in Laughery's repossession of the business and the site in the spring of 1979. While in possession of the property, Dennis had constructed four more ponds by diverting the natural stream.

In November, 1977, plaintiffs purchased their property, which is located approximately 50 feet below and to the south of the ponds on defendants' property. The spillage problems were apparent from the inception of plaintiffs' possession and were still continuing at the time of trial in 1981. Plaintiffs promptly and repeatedly called the problems to Dennis' and, later, to defendants' attention and demanded that corrective measures be taken. Dennis and defendants undertook some action aimed at remedying the condition, and they promised plaintiffs that there would be further efforts. Those efforts were largely aborted, however, by Dennis' financial problems, weather conditions and other factors, including defendants' dilatoriness or unsustained attention. Plaintiffs and defendants hired separate specialists to attempt to resolve the problem. The

---

[1] No one contends that the court erred in withdrawing the negligence and nuisance counts.

specialists' advice was conflicting; although they eventually agreed that digging trenches to divert water would be of some benefit, they apparently did not agree where the trenches should be located, and no trenches were installed.

Throughout the relevant period, plaintiffs continued to sustain serious property damage and continued to inform defendants, through engineering reports and other means, that there was a danger of ongoing and new problems, including landslides, if the conditions were not remedied. Defendants left the problem uncorrected for at least the four-year period about which this record informs us.

Defendants' first assignment of error is that the trial court incorrectly instructed the jury that the "wanton misconduct" it must find in order to assess punitive damages "is conduct amounting to a deliberate disregard of the rights of others *or a reckless indifference to such.*" (Emphasis supplied.) Defendants correctly argue that a materially identical instruction was disapproved in *Wolf v. Nordstrom,* 291 Or 828, 637 P2d 1280 (1981), where the court said:

> "* * * In particular, defendant argues that the instruction defining 'wanton misconduct' as 'conduct amounting to a deliberate disregard of the rights of others, or a *reckless indifference* to such rights' (emphasis added) violates the standard for punitive damages set by this court in *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978). * * *

> "This court in *Chamberlain* held that recklessness, by itself, will not support an award of punitive damages. Although recklessness may be a part of aggravating circumstances which justify an award of punitive damages, the trial judge erred in instructing the jury on recklessness alone as sufficient to justify an award of punitive damages. We cannot determine the standard actually used by the jury in arriving at its verdict for punitive damages and must therefore remand this case for retrial on the issue of punitive damages. * * *" 291 Or at 834-35. (Footnote omitted.)[2]

---

[2] *Wolf* was decided shortly before the trial of this case, but it appears that neither the trial judge nor counsel were aware of the decision at the time of trial. Defendants' counsel based his exception to the instruction on *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978). The instruction is as inconsistent with *Chamberlain* as it is with *Wolf.*

Plaintiffs agree that the instruction is contrary to *Wolf* but argue that, for two reasons, the giving of the instruction does not require reversal. They contend, first, that here, unlike *Wolf*, it *can* be ascertained that the award of punitive damages was based on a jury finding of deliberate disregard for the rights of others, rather than on a finding of recklessness. According to plaintiffs, they pleaded and proceeded at trial solely on the theory "that punitive damages were recoverable because the defendants' conduct was an intentional and deliberate disregard of the plaintiffs' rights." Plaintiffs note that the trial court, in summarizing their allegations for the jury, said that the complaint alleged only deliberate conduct as a basis for punitive damages, that "the questions of fact raised by the pleadings were the only questions submitted for the jury's determination" and that plaintiffs had the burden of proof on those questions.

Although it may be correct that plaintiffs sought punitive damages under their trespass count solely on the theory that defendants' conduct was deliberate, the evidence that plaintiffs adduced was not limited to that count and the evidence introduced in connection with that count was not limited to the punitive damages issue. More fundamentally, however much plaintiffs may have directed their pleading and proof to establishing that defendants' conduct was intentional, the instruction plainly communicated to the jury that plaintiffs did not *have* to prove that much to recover punitive damages. Plaintiffs' first contention, therefore, does not satisfy us that giving the instruction is not reversible error.

Plaintiffs' second basis for contending that the error in the instruction was harmless is:

"In determining whether an error in a jury instruction is prejudicial or merely harmless, the purported error must be viewed in light of the evidence to be considered by the jury in its application of that instruction. * * *

"In this case the evidence of the defendants' deliberate disregard of the plaintiffs' rights is the admission by all of the defendants in their testimony that they knew of facts that constitute a continuing trespass, that they knew that damage was continuing to result from that trespass and that for four years they refused to take action to stop the trespass." (Citations omitted.)

In our view, that argument presupposes that there *can* be circumstances under which a jury *must* find that the requisite "facts" to justify awarding punitive damages exist. It is true, as a general proposition, that factfinders are sometimes—albeit rarely—bound to find in accordance with uncontroverted evidence. *See Bezoff v. Crater Lake Motors, Inc.,* 259 Or 449, 486 P2d 1274 (1971). However, that proposition has no logical application in connection with punitive damages, where the factfinders' qualitative judgment of conduct is as relevant as the objective fact that the conduct occurred. In any event, we do not agree with plaintiffs' apparent point that, because of defendants' admissions, there was no conflict in the evidence bearing on whether defendants' conduct manifested a deliberate disregard for plaintiffs' rights.[3] We conclude that the error in the trial court's instruction was prejudicial.

■ ■ Defendants' second assignment of error is the converse of the argument of plaintiffs that we have just discussed. Defendants contend that the court erred in submitting the issue of punitive damages to the jury "because there was no evidence defendants' conduct was intentional, highly aggravated or volitional." To a large extent, defendants premise their argument on the not seriously disputed fact that they did not intend to dump water and debris on plaintiffs' property. They miss the point. The issue is whether defendants, with knowledge that the conditions on their land were causing damage to plaintiffs, did "everything reasonably possible to eliminate or minimize the damage," *McElwain v. Georgia-Pacific,* 245 Or 247, 251-52, 421 P2d 957 (1966), and, if they did not, whether their failure constituted a deliberate disregard of plaintiffs' rights.

In the statements of facts in their briefs and in the arguments under their assignments of error, defendants focus on the evidence that they responded to the problem, undertook remedial measures and acted responsibly in not taking further measures when the specialists hired by the

_____

[3] Here, as in some other connections, the parties *seem* to equate the question of whether conduct constitutes an "intentional" trespass with the question of whether the level of culpability of the conduct is sufficient to warrant punitive damages. The factual inquiries in the two contexts may be related, but they are not the same.

parties disagreed about what should be done. We agree with defendants that the jury *could* have found that defendants did *not* act with deliberate disregard for plaintiffs' rights; the question before us, however, is whether there was evidence from which the jury could find that defendants *did* act with deliberate disregard. *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981). There was.

■■ Defendants' third assignment is that the court erred by instructing:

> "One who accumulates water on his land *with reason to know* that water is seeping or probably will seep or escape onto or beneath the land of another has committed an intentional trespass and is liable for all damage caused thereby without any further proof of fault." (Emphasis supplied.)

Defendants explain:

> "* * * [T]he trial court's instruction was in error for two reasons. First, it allowed the jury to equate 'intent' with 'reason to know', a negligence standard, and secondly, it did not advise the jury that it must find the acts 'setting in motion' the trespass were done with knowledge a trespass would occur.

> "The error was harmful because it defined an intentional act under a negligence standard of care, and the jury may have used this definition of 'intent' in finding defendants acted deliberately and in awarding punitive damages.

> "As previously discussed, punitive damages may only be recovered where the defendant acted intentionally or with a deliberate disregard of plaintiffs' rights; gross negligence or recklessness is not enough. Mere negligence has never been an acceptable basis for an award of punitive damages."[4]

The Supreme Court stated in *Furrer v. Talent Irrigation District,* 258 Or 494, 466 P2d 605 (1970):

> "In the present case there was evidence to establish that defendant's canals were the source of a substantial amount of water which found its way to plaintiff's land. There was also evidence that *defendant knew or had reason to*

---

[4] *See* n 3, *supra.*

*know* that the water was seeping into plaintiff's land. *We have, then, an intentional intrusion which,* if all other factors are present, *could constitute an interference with plaintiff's exclusive possession and give rise to an action of trespass* * * *."* 258 Or at 513. (Emphasis supplied.)

The instruction here was not erroneous.[5]

Defendants' next two assignments of error relate to the award of damages for emotional distress. They argue, first, that the issue should not have been submitted to the jury and, second, that the court erred in refusing to give the following requested instruction:

"As a general rule, the law does not provide for compensation for mental anguish or emotional distress in trespass cases. An exception may exist, however, where the preponderance of evidence has shown the existence of such damage as the direct and natural result of aggravated conduct on the part of the defendant. It is proper for the jury to take into account a claim for mental suffering only where there is evidence of genuine emotional damage in some special sense, different than that which would flow from any substantial interference with the use and enjoyment of property, and which is shown to be attributable to aggravated conduct on the part of defendant."

They state that, "[o]rdinarily, damages for emotional distress are not recoverable in an action for trespass unless there is evidence that the mental distress was a direct and natural result of a defendant's conduct." *See Senn v. Bunick,* 40 Or App 33, 39, 594 P2d 837, *rev den* 287 Or 149 (1979), and authority there cited. Defendants then note:

---

[5] Defendants rely on our statement in *Lunda v. Matthews,* 46 Or App 701, 613 P2d 63 (1980):

"A trespass may arise from an intrusion upon plaintiffs' land which is either intentional, negligent or the result of ultrahazardous conduct. * * * Intentional is used in this context to mean that the acts setting in motion the invasion were done with knowledge that a trespass would result and not that the acts were done for the specific purpose of causing a trespass or injury. * * *" 46 Or App at 705. (Citations omitted.)

They understand that language to mean that, if the *original act* setting the invasion in motion was not accompanied by knowledge that the trespass would result, there cannot be an intentional trespass. Defendants' understanding is incorrect. Our definition of "intentional" in *Lunda* is every bit as applicable to situations like the present one, where there is a *continuing* intrusion known to the intruder that he allows to persist.

"An exception to the general rule has also been applied in nuisance actions where the mental distress is a direct and natural result of the interference with use and enjoyment. *Edwards v. Talent Irrigation District*, 280 Or 307, 570 P2d 1169 (1977) and *Macca v. General Telephone Company of Northwest*, 262 Or 414, 495 P2d 1193 (1972). *Edwards* and *Macca* were specifically limited to actions for nuisance and to that extent, are not controlling in this case since plaintiffs' claim for nuisance was not submitted to the jury."

In *Edwards v. Talent Irrigation District*, 280 Or 307, 309-10, 570 P2d 1169 (1977), the court stated that "damages for mental anguish are recoverable in a negligence action when they are a result of defendant's interference with the use and enjoyment of plaintiff's land." In a footnote to the *Edwards* opinion, the court said:

"Although we hold in this case that emotional distress damages may be recovered in an action for nuisance, we emphasize that our holding is limited to this particular species of case. The law involving recovery for emotional distress generally is confused and perhaps in need of rethinking by the courts. We have concluded, however, that this case does not provide a proper vehicle for reconsideration of the rules governing recovery for this type of injury." 280 Or at 310, n 4.

Defendants appear to understand that footnote as in some manner limiting emotional distress damages to nuisance actions. In our view, the purposes of the *Edwards* footnote were *only* to dispel any understanding that the case decided anything beyond the immediate issue presented and to suggest that the general subject of emotional distress damages might eventually receive more extensive attention.

■ We conclude that the *Edwards* rule, allowing emotional distress damages for interference with the use and enjoyment of land, is as applicable in intentional trespass actions as in negligence or nuisance actions. No reason occurs to us why the same kind of injury resulting from the same kind of act should not be compensable solely because the actor's conduct is deliberate rather than negligent.[6]

---

[6] We noted in *Senn v. Bunick, supra:*

Indeed, such a distinction would seem especially anomalous in light of the authority defendants summarize as holding:

> "Because emotional distress is often incapable of objective proof, evidence of the genuineness of the plaintiff's alleged emotional suffering is typically supplied by the extreme and aggravated character of the defendant's conduct. Often, this is the same conduct which supports an award of punitive damages. * * *"

*See, e.g, Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974); *but see Meyer v. 4-D Insulation Co., Inc.,* 60 Or App 70, 73, n 2, 652 P2d 852 (1982).

We do not understand the "interference with use and enjoyment" test of *Edwards* to be inconsistent with the "direct and natural result" test that defendants argue should apply. We understand *Edwards* to hold that an interference with use and enjoyment can be a kind of direct and natural result of an intrusion that will permit an award of emotional distress damages. Here, there was ample evidence that plaintiffs suffered emotional distress and that the distress was attributable to defendants' interference with plaintiffs' use and enjoyment of their property.

■　Defendants' requested instruction was correctly rejected by the trial court, because it is not an accurate statement of the law. *See Wolf v. Nordstrom, supra,* 291 Or at 835. In addition to its inconsistency with what we have said regarding interference with use and enjoyment as a basis for emotional distress damages, it wrongly implies that such damages can be awarded *only* if the causative conduct is "aggravated."

■　Defendants' final assignment of error is that the court should have concluded that the activity was not ultrahazardous and therefore should have withdrawn the

---

"The dissent makes the point that the Supreme Court in *Edwards v. Talent Irrigation District,* 280 Or 307, 570 P2d 1169 (1977), limited its holding to nuisance cases. It is true that the Court made such a statement in note 4, 280 Or at 310. The dissent, however, overlooks the fact that the Court correctly pointed out that 'nuisance' only characterizes the interest invaded—namely the right of use and enjoyment of real property—and does not define the type of conduct which subjects the actor to liability. *See* 280 Or at 309-10, note 2. The invasion of the property right may be intentional or negligent; in *Edwards* it was negligent, yet damages for mental suffering were sustained." 40 Or App at 39-40, n 1.

ultrahazardous activity count from the jury. Reduced to essentials, defendants' argument is that, in *Nicolai v. Day,* 264 Or 354, 506 P2d 483 (1973), the court adopted a six-factor test for determining whether an activity is ultrahazardous and that the evidence here was conclusive that defendants' activity passed two of those tests. Defendants state:

> "* * * [P]laintiffs failed to present any evidence that defendants' conduct was unusual or abnormal for the locality or that risk of harm could *not* have been prevented by exercise of reasonable care. In fact, the evidence tended to establish the contrary. The trial court expressly found that the risk of harm could have been prevented. * * *" (Emphasis Defendants'.)[7]

We need not comment on whether we share defendants' understanding that the court in *Nicolai* meant that an activity could be found ultrahazardous only if it failed all six parts of the test. It is clear from the court's later opinion in *Koos v. Roth,* 293 Or 670, 652 P2d 1255 (1982), that the inquiry is not that rigidly circumscribed and that the relevance of the "common usage" and "inappropriate to the location" factors is generally marginal. 293 Or at 676-79. The court stated by way of summary in *Koos:*

> "* * * [T]he focus in our cases has been on assessing abnormal hazards by their potential for harm of exceptional magnitude or probability despite the utmost care. This potential may, of course, differ with the place where the activity is conducted; but an activity is not otherwise immune from strict liability because it is 'appropriate' in its place. * * * A danger that is only ordinary in an appropriate location may be abnormal where it exposes others to

---

[7] The court stated:

"* * * I think there is sufficient evidence here to constitute ultrahazardous. They have got water stored above there. *If they had taken more precaution they could have eliminated that.* It's not an area of common usage to have anything above another piece of property. It definitely involves a high degree of risk of something happening, and it did. * * *" (Emphasis supplied.)

Defendants rely on the emphasized language for their proposition that the court expressly found that the risk of harm could have been prevented by the exercise of reasonable care. We think that, in context, it is ambiguous at best whether the trial judge was addressing that point. In any event, whether an activity is ultrahazardous is a question of law, and any "finding" the trial court may have made to the effect suggested is not binding on us. *Loe et ux v. Lenhard et al,* 227 Or 242, 249, 362 P2d 312 (1961).

an extraordinary risk or magnitude of harm, but an extraordinary risk does not become ordinary because it occurs in its own appropriate place." 293 Or at 681-82.

■ ■We conclude that the storage of the large quantity of water above plaintiffs' property created a potential for harm of exceptional magnitude and probability that could not be averted by the exercise of utmost care.[8] The trial court did not err in concluding that the activity was ultrahazardous.

■ The remaining question is the scope of our remand, which is necessitated solely by the error in the court's instruction on punitive damages. In *Wolf v. Nordstrom, supra,* under materially identical circumstances, the court stated:

> "* * * [W]e find this case to be exceptional and not within the general rule of *Maxwell [v. Port. Terminal RR. Co.,* 253 Or 573, 456 P2d 484 (1969)] that retrial should be on all factual issues. * * *" 291 Or at 835.

It therefore remanded for further proceedings on the issue of punitive damages only. Similarly, here, we remand only on the punitive damages issue. We emphasize, however, that the questions on remand are *both* whether punitive damages are warranted by defendants' conduct and, *if so,* what if any amount plaintiffs should recover as punitive damages.

Reversed and remanded for further proceedings on the issue of punitive damages; affirmed in all other respects.

---

[8] It is somewhat anomalous, although not inconsistent, to conclude that defendants may be strictly liable for conducting an activity that creates a risk of harm that cannot be alleviated by utmost care and to conclude also that the jury could find that defendants' failure to eliminate or minimize the risk manifested a deliberate disregard of plaintiffs' rights thereby permitting punitive damages to be assessed. However, the ultrahazardousness issue is initially a legal question for the court; under current authority, the punitive damages issue is factual, although the implications of and criteria for a particular award of punitive damages would seem to make that issue as appropriate a matter for initial determination by the court as is the ultrahazardous activity issue. *Compare 2-D's Logging v. Weyerhaeuser, supra,* 53 Or App at 688-89, with *Koos v. Roth, supra,* 293 Or at 677-82.