Argued and submitted September 20, 1985, resubmitted In Banc May 7, affirmed in part, reversed in part, and remanded June 11, reconsideration denied September 5, petition for review denied October 28, 1986 (302 Or 159)

# WELLS et al,
*Respondents - Cross-appellants,*

*v.*

# MARLEAU et al,
*Appellants - Cross-respondents.*

## (82-3-133; CA A33228)

720 P2d 409

Billy M. Sime, Salem, argued the cause for appellants - cross-respondents. With him on the briefs were Parks & Bauer, Salem.

Charles Robinowitz, Portland, argued the cause and filed the brief for respondents - cross-appellants.

NEWMAN, J.

WARDEN, J., concurring in part, dissenting in part.

## NEWMAN, J.

Defendants are the sellers of residential real property. In this action for breach of contract and fraud, they appeal from a judgment entered on June 18, 1984, on a jury verdict. Plaintiff buyers pleaded breach of contract and fraud and sought the same amount of compensatory damages of $8,500 on both claims and punitive damages on the fraud claim. They alleged that defendants had violated their agreement to provide a satisfactory septic system and concealed material facts concerning the condition of the system and the suitability of the surrounding soil. At the close of the evidence the court struck plaintiffs' claim for punitive damages. Plaintiffs cross-appeal from this ruling.

Both the contract and fraud claims for compensatory damages were submitted to the jury. Its verdict found specially for plaintiffs on both claims and recited that "we assess plaintiffs [sic] damages in the sum of $8,500." Although the judgment recites that the jury found damages of $8,500 on each claim, it orders that plaintiffs shall have judgment against defendant "in the sum of $8,500, plus interest at the rate of 9 percent per annum from August 14, 1980," but does not state whether that sum is on the contract claim, the fraud claim or on both.[1]

■     Defendant's first two assignments require no discussion. In their third assignment, they assert that the trial court erred by awarding prejudgment interest to plaintiffs from the date on which the transaction closed. We agree. Plaintiffs failed to prove that the exact pecuniary amount of the loss that they suffered was either ascertained or ascertainable by simple computation as of the date of closing. *See Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943); *Arden-Mayfair v. Patterson,* 46 Or App 849, 857, 613 P2d 1062, *rev den* 290 Or 149 (1980). Plaintiffs did not assert that prejudgment interest could accrue beginning on

---

[1] Defendants do not assign as error that the special verdict was inadequate to show that the damages awarded were attributable to both the contract and fraud claims or that the judgment is at variance with the verdict. Accordingly, we interpret the judgment to award a judgment of compensatory damages to plaintiffs, exclusive of interest and costs, of $8,500 on the contract claim and $8,500 on the fraud claim, but not more than $8,500 in total. The parties do not appear to be in dispute that this interpretation is correct.

the happening of any event other than the closing. Accordingly, on the appeal, we reverse the award of prejudgment interest, but otherwise affirm.

■        We turn to the cross-appeal. There was abundant evidence from which the jury could find that defendants committed intentional fraud and that they had acted with the requisite aggravation, malice or wantonness to permit the imposition of punitive damages. The trial court therefore erred by striking plaintiffs' claim for punitive damages. *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981); *see also Schmidt v. Pine Tree Land Dev.,* 291 Or 462, 631 P2d 1373 (1981).

The remaining question is what issue or issues must be retried in the light of that error. Plaintiffs argue that only the question of punitive damages should be retried. Defendants argue that if we conclude—as we have—that the failure to submit the claim for punitive damages to the jury was error, a plenary retrial is necessary.[2] Appellate courts have given diverse treatment to the questions of whether and what issues must be retried on remand other than the specific issue on which the trial court erred. *See, e.g., Wolf v. Nordstrom,* 291 Or 828, 637 P2d 1280 (1981); *Maxwell v. Port. Terminal RR. Co.,* 253 Or 573, 456 P2d 484 (1969); *Canton v. Hauge,* 72 Or App 548, 696 P2d 1126 (1985); *Wilson v. B.F. Goodrich,* 52 Or App 139, 627 P2d 1280 (1981), *aff'd* 292 Or 626, 642 P2d 644 (1982). The general rule was stated in *Maxwell* that retrial should be had on all factual issues. In *Maxwell,* however, the court made it clear that it was referring to the "ordinary two-party personal-injury case," and also recognized that there could be "exceptional cases in which the trial court, in the exercise of judicial discretion, properly will limit the issues for a new trial." 253 Or at 577. Moreover, in *Maxwell,* the court noted that in earlier non-personal injury cases the court had remanded for a new trial on limited issues. *See Brown v. Bonesteele,* 218 Or 312, 344 P2d 928 (1959); *Western Feed Co. v. Heidloff,* 230 Or 324, 370 P2d 612 (1962).

A conclusion that *Maxwell* requires complete retrial

---

[2] It is unclear whether defendants mean that the breach of contract claim as well as the fraud claim should be retried. If that is their contention, we do not agree that the breach of contract claim must be retried.

of the fraud claim would be at odds with the court's more recent decision in *Wolf v. Nordstrom, supra.* In *Wolf,* a false imprisonment case, the court, after deciding that the trial court improperly set aside the jury's verdict for punitive damages, did not vacate the plaintiff's judgment. Rather, it found that *Maxwell* did not govern the case and, on remand, it limited retrial to the issue of punitive damages. Although the issues of liability and general damages went to the jury in the first trial, the court chose not to resubmit those issues to the jury and force the plaintiff to reprove his entire case on retrial. It stated that

> "recklessness, by itself, will not support an award of punitive damages. Although recklessness may be a part of aggravating circumstances which justify an award of punitive damages, the trial judge erred in instructing the jury on recklessness alone as sufficient to justify an award of punitive damages. *We cannot determine the standard actually used by the jury in arriving at its verdict for punitive damages and must therefore remand this case for retrial on the issue of punitive damages."* 291 Or at 835. (Emphasis supplied.)

Similarly, in *McGregor v. Barton Sand & Gravel, Inc.,* 62 Or App 24, 660 P2d 175 (1983), an action for trespass, nuisance, negligence and ultrahazardous activity arising out of the spillage of water and debris onto the plaintiffs' property from artificial ponds on the defendant's property, the court reversed, because of the trial court's erroneous instruction on punitive damages, and remanded for a new trial only on the issue of punitive damages. We stated:

> "In *Wolf v. Nordstrom, supra,* under materially identical circumstances, the court stated:
>
> > "* * *[W]e find this case to be exceptional and not within the general rule of *Maxwell [v. Port. Terminal RR. Co.,* 253 Or 573, 456 P2d 484 (1969)]* that retrial should be on all factual issues. * * *' 291 Or at 835.
>
> "It therefore remanded for further proceedings on the issue of punitive damages only. Similarly, here, we remand only on the punitive damages issue. We emphasize, however, that the questions on remand are *both* whether punitive damages are warranted by defendants' conduct and, *if so,* what if any amount plaintiffs should recover as punitive damages." 62 Or App at 35. (Emphasis in original.)

The case before us is also not a case on which retrial

should be had on all factual issues. The jury has already determined that defendants are *liable* for fraud. What is left is for plaintiffs to prove on remand that defendants committed the fraud with requisite intent so that plaintiffs may recover punitive damages. Although the evidence of intent may also bear on liability, the two issues are no more connected than they were in *Wolf* and *McGregor*. Moreover, if we were to vacate plaintiff's entire fraud judgment, particularly the jury's determination of fraud liability, we would impose on plaintiffs an unnecessarily heavy burden for prevailing on their cross-appeal, and we would break stride with the Supreme Court in *Wolf* and with our own decision in *McGregor*.

We do not disturb plaintiffs' judgment on the contract and fraud claims for compensatory damages.

On the appeal, reversed and remanded with instructions to delete the award of prejudgment interest and award statutory interest from June 18, 1984; otherwise affirmed; on the cross-appeal, reversed and remanded for further proceedings on punitive damages only not inconsistent with this opinion.

**WARDEN, J.,** concurring in part; dissenting in part.

I concur in the majority's disposition of all issues except its limitation of the remand on the fraud claim to the question of punitive damages. I would follow the rule of *Maxwell v. Port Terminal RR Co.,* 253 Or 573, 456 P2d 484 (1969), and would remand for a retrial on all factual issues, including liability for fraud as well as punitive damages.[1]

The court said in *Maxwell*:

"In the ordinary two-party personal-injury case, however, evidence of fault can influence the jury's measurement of damages; and the kind and degree of injuries may influence some jurors in their evaluation of the evidence on liability. Whatever logical problems these elements of lawyer forklore may suggest, we believe that neither side in this type of case should be encouraged to manipulate errors in one trial to gain

---

[1] I would also include the issue of compensatory damages in the remand, were it not for the fact that the present judgment—if not the verdict—awards plaintiffs of damages alternatively on the breach of contract and the fraud claims in the full amount they sought.

tactical advantage in a new trial before a new jury. Accordingly, we hold that the new trial in a personal-injury case ordinarily should be a new trial on all contested factual issues, regardless of the ability of the parties on appeal to pinpoint error so as to show that the error, if any, may have affected only one issue. There will of course, be exceptional cases in which the trial court, in the exercise of judicial discretion, properly will limit the issues for a new trial. But the standard to be applied in the exercise of this discretion is reasonable certainty that the issue or issues to be eliminated from the second trial are no longer viable issues in the case and that their removal will not prejudice the right of either party to the kind of jury trial to which he would have been entitled but for the error or errors necessitating the new trial." 253 Or at 577. (Citation omitted.)

Stripped to its essentials, the majority opinion offers two reasons for a limited remand in this case: first, that later cases have departed from *Maxwell* and render it unauthoritative; and, second, that it is somehow unfair to deprive plaintiffs of the judgment they have obtained on the liability question, when the error necessitating reversal pertains only to the punitive damages question.

The majority's first proposition rests on a random collection of post-*Maxwell* decisions by the Supreme Court and this court which have ordered partial remands. Most of those decisions offer little or no explanation for their dispositions, and some of them do not even cite *Maxwell*, let alone overrule or distinguish it. *Wolf v. Nordstrom*, 291 Or 828, 637 P2d 1280 (1981), is an exception. There, the court said:

"Since the trial court's directed verdict was proper, we find this case to be exceptional and not within the general rule of *Maxwell* that retrial should be on all factual issues." 291 Or at 835.

Although it does so cursorily, *Wolf* offers *some* explanation for its limited remand. At the first trial, a verdict had been directed against the defendant on its affirmative defense to the claim of liability, because the evidence was insufficient to support the defense. Hence, there was no factual issue to retry with respect to liability, because the defendant lacked the evidence to create a question for the factfinder. Here, conversely, there was evidence at the first trial from which the jury could have found that defendants were not liable on the

fraud claim. It is also noteworthy that, in *Wolf,* the error which necessitated the remand was raised by the cross-appeal of the defendant which had been found liable. Here, the error requiring that we remand is raised by the cross-appeal of plaintiffs from the judgment which is favorable to them on the liability question.

Most saliently, the court expressly stated in *Wolf* that the *Maxwell* rule remains the general rule. Given that statement in *Wolf,* I find it somewhat dumbfounding that the majority seems to regard *Wolf* as having overruled *sub silentio* a case about which it was not silent and the general rule of which it endorsed.

The only other recent case I have found that deals with the question of plenary or limited remands with anything more than a conclusory dispositional statement is *Wilson v. B.F. Goodrich,* 52 Or App 139, 627 P2d 1280 (1981), *aff'd* 292 Or 626, 642 P2d 644 (1982). There, we adverted to the tendency of other recent cases to disregard *Maxwell,* and we explained why we followed *Maxwell* and why we should:

> "In decisions more recent than *Maxwell,* the Supreme Court and this court have remanded cases for retrial on damages alone, where the circumstances were hardly 'exceptional.' *See, e.g., Weiss v. Northwest Accept. Corp.,* 274 Or 343, 546 P2d 1065 (1976); *Criqui v. Pearl Music Company,* 41 Or App 511, 599 P2d 1177, *rev den* 288 Or 173 (1979). The argument can be made that the quoted language from *Maxwell* presupposes that juries will not follow the court's instructions. In our view, however, a more convincing argument can be made that *Maxwell* recognizes a predictable reality about jury behavior to which courts should not be blind in fashioning remedies.
>
> "In any event, because the measure of damages in this case *cannot* be ascertained without evidence of liability on the negligence count and contributory negligence defense being produced, our remand is for a new trial of all issues." 52 Or App at 153. (Emphasis supplied.)

Similarly, in this case, before the question of punitive damages can be reached, the jury must consider whether defendants' fraud, if any, was intentional or reckless and, if the latter, whether it was accompanied by aggravating factors. In other words, the issue on which the remand is based *cannot* be retried without a presentation of all evidence about the

conduct of defendants on which plaintiffs base their assertion that defendants are liable.

It is true, as the majority notes, that *Maxwell* itself states that there will be "exceptional cases" to which the general rule does not apply, but, as we suggested in *Wilson,* not *every* case can be an exceptional one. This case certainly is not. It involves a garden variety cross-appeal by plaintiffs from a judgment with which they are only partially satisfied. They have persuaded us that there was error, and the effect of the error is that all evidence germane to their fraud claim must be presented to a new trier of fact. If, contrary to *Maxwell,* that trier of fact is not to find all of the facts, the time has come for the Supreme Court to give *Maxwell* a proper burial, rather than leave a stated rule in place which the two appellate courts have come to follow or disregard on a completely *ad hoc* basis. The Supreme Court *may* overrule *Maxwell. We* cannot. Were I a member of the Supreme Court, I would vote to leave *Maxwell* intact.

As I have noted, part of the majority's basis for concluding that the new factfinder should not be allowed to try all of the facts is that the majority perceives it as unfair for plaintiffs to have to prove liability again when liability was found at the first trial. I am at a loss to understand the majority's premise that plaintiffs are entitled both to eat and have their cake. It seems to me to be a novel propositon that a party who appeals and demonstrates error is unfairly burdened by having to retry his or her case. That is a normal consequence of a successful appeal. Stated otherwise, a party who appeals runs the inherent risk of winning.

The point of *Maxwell* which apparently escapes the majority is that any unfairness that enters the picture arises when there *is* a limited remand, and the party on whom the unfairness falls is the unsuccessful respondent or cross-respondent. That is so for two reasons. The first is that the trier of fact's findings on liability, damages and punitive damages are often interrelated and influence one another. The second is that seriatim trials and appeals through which one party gradually prevails, inch by inch, are inherently unfair to the other party. It is simply not a value of our system to structure things so that one party to a civil appeal risks everything and the other nothing, or to enable a party—in the

words of *Maxwell*—"to manipulate errors in one trial to gain tactical advantage in a new trial before a new jury." 253 Or at 577. I do not suggest that that was plaintiffs' objective here. I do suggest that the majority's thesis, that an appealing party is *entitled* to put the favorable part of a judgment in the bank and seek reversal only of the unfavorable part, is rife with the potential for that kind of abuse of the system and the resulting potential for prejudice to the opposing party.

No case could better illustrate the extreme prejudice that a limited remand can achieve than this one. *Maxwell* states that liability and *compensatory* damages are interrelated in a jury's deliberations and its findings; it is even more clear that liability and *punitive* damages are interrelated. That biasing factor is particuarly pronounced in this case, where the question of compensatory damages *cannot* go to the jury. *See* n 1, *supra.* In effect, the majority's remand would permit that the jury be told (1) that defendants are perpetrators of a fraud, (2) that it not be told that the actual damage the fraud has occasioned has already been compensated by the first verdict and (3) that the only redress it can provide is an award of punitive damages. *Compare* the separate opinion of Peterson, J., in *Wolf v. Nordstrom, supra.*

A final concern that warrants consideration in determining whether remands should be limited or plenary is the preservation of judicial resources. I have noted earlier (and the majority does not assert otherwise) that, in this case, there is no possibility that the evidentiary showing the parties must make to resolve the punitive damages issue will not entail all of the evidence that would have to be presented if liability on the fraud claim were in issue. The trial court's time will not be saved by letting the jury hear and see everything germane to liability but not letting the jury decide whether defendants are liable. On a more abstract plane, the kind of manipulative use of the process which partial remands encourage is hardly conducive to judicial economy.

For the foregoing reasons, I would hold that the remand on the fraud claim should be for a retrial on the questions of both liability and punitive damages, and I respectfully dissent from the portion of the majority opinion that holds otherwise.

Warren and Van Hoomissen, JJ., join in this opinion.