Argued and submitted September 15, 1986, reversed and remanded with instructions
March 25, 1987

WEBSTER,
*Appellant,*

*v.*

DIERINGER'S VARIETY, INC.,
*Respondent.*

(A8311-07336; CA A35931)

734 P2d 402

Victor Calzaretta, Portland, argued the cause and filed the briefs for appellant.

Mildred J. Carmack, Portland, argued the cause for respondent. With her on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before, Joseph, Chief Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff appeals a judgment notwithstanding the verdict for defendant on the issue of punitive damages in her action for false imprisonment arising out of her detention for suspected shoplifting. We reverse and remand.

We review the evidence in the light most favorable to plaintiff. *Jacobs v. Tidewater Barge Lines,* 277 Or 289, 562 P2d 545 (1977); *Wells v. Home Purchasing Corp.,* 84 Or App 103, 733 P2d 898 (1987). On October 7, 1983, plaintiff and her two small children were shopping in defendant's store. The children were irritable, and one of them complained of hunger. To quiet the children, plaintiff took a $1.45 package of pepperoni from a display rack near the checkstand, opened it and divided it between them. She wrapped the empty package around her hand as a reminder to pay for the pepperoni. She continued shopping and, when she had finished, she paid for the groceries but forgot to pay for the pepperoni. Defendant's security agent had observed plaintiff for some time, stopped her as she was leaving the store and asked for a sales receipt for the pepperoni. Plaintiff realized that she had lost the wrapper. She told the security agent that she forgot to pay for the pepperoni and would do so at that time. He took her to a small room at the back of the store, where he asked her to sit down.

Plaintiff testified that, immediately after they entered the room, "he asked me if I was * * * going to cry" and that, when she replied, "No, I don't think so," he stated, "Well, I'm glad, because the last person in here used all my Kleenex." Plaintiff testified that his remark was made "as though he would enjoy the experience" of seeing her upset.[1] He told her that she could go to prison for a year and be fined

---

[1] Plaintiff testified:

"[Defense Attorney]. Did you sit down [when you entered the interview room]?

"[Plaintiff]. Not at first. At first, he asked me if I was — thought I was going to cry and I said, 'No, I don't think so.'

"He said, 'Well, I'm glad because the last person that was in here used all my Kleenex.'

"* * * * *

"Q. What effect does it have on him if you were going to cry?

"A. I was really upset. I thought he kind of enjoyed it."

$500 for theft but that, if she would sign a "Civil Compromise Agreement" and pay $100 plus $2 for the pepperoni, she would be allowed to leave. Plaintiff testified that, although she did not understand what she was signing, she signed the papers so that she and her children would be allowed to leave.

She left the store and immediately went to a neighbor's home, where she described the incident. The neighbor testified that she was "extremely upset." Plaintiff and the neighbor then went to plaintiff's house. Plaintiff testified that, a few minutes after they arrived, defendant's security agent called her and said, "Mrs. Webster, this is [defendant's security agent] and I just called to tell you that I found the [pepperoni] wrapper and I wanted to know if you wanted it for a souvenir." At trial, he admitted that he had made that call.

Plaintiff brought this action for false imprisonment, seeking $25,000 general and $25,000 punitive damages. At the close of plaintiff's case, and again at the close of the evidence, defendant moved to strike the claim for punitive damages. The court denied the motions. The jury returned a verdict for plaintiff for $5,000 general and $25,000 punitive damages. Defendant moved for judgment *n.o.v.* and, alternatively, for judgment *n.o.v.* only on the issue of punitive damages. The court granted defendant's motion on the issue of punitive damages. Plaintiff assigns that ruling as error and argues that there was evidence to support the jury's verdict.[2]

---

[2] Defendant does not argue that the evidence was insufficient to support the jury's finding that defendant falsely imprisoned plaintiff. When the court instructed the jury, it took into consideration the ORS 131.655 defense:

"(1) Notwithstanding any other provision of law, a peace officer, merchant or merchant's employe who has probable cause for believing that a person has committed theft of property of a store or other mercantile establishment may detain and interrogate the person in regard thereto in a reasonable manner and for a reasonable time.

"(2) If a peace officer, merchant or merchant's employe, with probable cause for believing that a person has committed theft of property of a store or other mercantile establishment, detains and interrogates the person in regard thereto, and the person thereafter brings against the peace officer, merchant or merchant's employe any civil or criminal action based upon the detention and interrogation, such probable cause shall be a defense to the action, if the detention and interrogation were done in a reasonable manner and for a reasonable time."

The court also instructed the jury:

"Under the indispassionate [sic] facts in this case, I instruct you that the defendant had, as a matter of law, probable cause to detain and interrogate the

In *Lukas v. J. C. Penney Co.,* 233 Or 345, 378 P2d 717 (1963), a store employe, who refused to identify himself to the plaintiff, "scuffled" with her for about two minutes in an attempt to search her shopping bag for a dress. Although the evidence was sufficient to support the verdict that the defendant had falsely imprisoned the plaintiff, the court concluded that "there was 'no evidence * * * of malice sufficient to take the issue of punitive damages to the jury' " and set aside an award of punitive damages. 233 Or at 362. In *Fabish v. Montgomery Ward,* 276 Or 29, 553 P2d 1057 (1976), the court refused to set aside an award of punitive damages for false imprisonment where the defendant had detained the plaintiff for an hour and did not permit him to call another store to verify that he had purchased the item that the defendant accused him of stealing from its store. The opinion in *Fabish* distinguished *Lukas* on the basis that, in *Lukas,* "there was no such evidence of aggravated conduct." 276 Or at 32. In *Wolf v. Nordstrom,* 291 Or 828, 637 P2d 1280 (1981), the court also distinguished *Lukas* and held that the plaintiff's evidence was sufficient to submit the issue of punitive damages to the jury:

> "In the case before us, the detention was of a thirteen year old boy for some 20 minutes with defendant's employee neither identifying himself nor informing plaintiff of his objective in the detention. Plaintiff was not in the flight path of the true shoplifter, nor was he seen by his captor in defendant's store. Rather, defendant's employee travelled in the opposite direction from the chase to a building two blocks from defendant's store and detained plaintiff, who did not even match the description later given by the security officer. The employee forced plaintiff to accompany him to defendant's store, unlike the summary search performed in *Lukas,* and

---

plaintiff.

"The first issue for you to determine, therefore, is whether or not the defendant detained or interrogated the plaintiff in a reasonable manner."

In the light of that instruction, the jury necessarily found that defendant's employe detained plaintiff in an unreasonable manner.

The court also instructed the jury on punitive damages:

"If you have found that plaintiff is entitled to general damages, you may consider whether to award punitive damages. Punitive damages are an award to the plaintiff in addition to general damages in order to discourage the defendant and others from engaging in wanton misconduct.

"Wanton misconduct is conduct to [sic] disregard the arguments of others or to intentional interference [sic] of such rights."

Defendant did not object to those instructions.

despite the clear absence of the allegedly stolen tennis shoes from plaintiff's possession. The *Lukas* case is distinguishable from the case before us and does not control our decision." 291 Or at 832.

It is not entirely clear from these cases what standard trial courts are supposed to apply in determining whether to submit punitive damages to the jury in false imprisonment cases. *See 2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 687, 632 P2d 1319, *rev den* 292 Or 109 (1981). In *State ex rel Young v. Crookham,* 290 Or 61, 71, 618 P2d 1268 (1980), however, the court stated:

"Under the present state of the law, because punitive damages are to be determined by the trier of fact, the court may never reexamine nor withhold from the jury such an issue unless there is no evidence to support a finding of malicious or wanton conduct."

Here, there was evidence from which the jury could find that defendant's employe not only detained plaintiff in an unreasonable manner, but that his conduct was malicious or wanton.

The jury could have inferred that the security agent made the remark about Kleenex to taunt her. The jury could also have found that his subsequent telephone call to her was intended to harass or annoy her. It could have inferred from that evidence, and from plaintiff's testimony about his attitude and remarks in the interview room, that his conduct there was similarly motivated.[3] The jury, therefore, could have found that, during the time that defendant's employe detained plaintiff in the interview room, he acted with malicious intent to harass or annoy her. Accordingly, the court erred when it granted defendant the judgment *n.o.v.* on the issue of punitive damages.

Reversed and remanded with instructions to reinstate the verdict and enter judgment thereon.

---

[3] Here, the award of punitive damages is not based on an injury that results from an " 'abuse' of speech only." *See Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 733 P2d 430 (1987); *Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981).